{¶ 1} Jonas Miller appeals his convictions for theft and safecracking. First, Miller contends that plain error resulted from the admission of "other act" evidence, which implied because he was not a law-abiding citizen he must be guilty of these offenses. In light of all the other evidence that was properly admitted, the evidence challenged by appellant was so minimal in both substance and potential impact that it did not foster a manifest miscarriage of justice.
 {¶ 2} Second, Miller contends that instances of prosecutorial misconduct, in which the prosecutor allegedly vouched for the credibility of the state's witnesses and argued facts that were not supported by the evidence, deprived him of his right to a fair trial. Because the prosecutor's comments did not imply the knowledge of facts outside the record nor place his personal credibility at issue, they did not amount to improper vouching. Rather, they were a fair comment on what the evidence indicated. Thus, the prosecutor did not engage in prosecutorial misconduct.
 {¶ 3} Third, Miller contends that his convictions are against the manifest weight of the evidence because the state's primary witness was not credible. However, the jury was in a much better position than us to determine the witness' credibility. Because substantial, credible evidence supports the jury's decision to convict Miller for theft and safecracking, the verdict is not against the manifest weight of the evidence.
 {¶ 4} Fourth, Miller contends that he was deprived of his right to the effective assistance of his trial counsel based upon counsel's failure to object to the purported errors Miller presented in his first two assignments. Having rejected those purported errors on their merits, we also reject them as a basis for ineffective assistance of counsel. And counsel's failure to object to comments presented by a codefendant's counsel during opening statements did not affect the outcome of the trial. Thus, Miller did not suffer ineffective assistance of counsel.
 {¶ 5} Finally, Miller contends, and the state concedes, that the trial court erred when it imposed a sanction of five years of postrelease control in the judgment entry of conviction after correctly advising appellant at sentencing of a possible three-year period of postrelease control. We remand to the trial court for imposition of the correct period of post-release control.
 {¶ 6} Accordingly, we affirm Miller's convictions but remand for modification of the judgment entry of conviction to reflect a three-year period of postrelease control.
 I. Facts {¶ 7} According to the state's evidence, Miller and several other people attended a party at Matt Nonnenmacher's grandparents' home on an evening while Nonnenmacher's grandparents were out of town on vacation. Several days after the party, Nonnenmacher discovered that his grandparents' safe containing jewelry, guns, coins, and documents were missing from the home and he reported the loss to law enforcement authorities.
 {¶ 8} A grand jury issued indictments against Miller and four codefendants arising out of the theft of the safe and its contents. Miller was indicted on charges of theft, in violation of R.C. 2913.02, safecracking, in violation of R.C. 2922.31, and tampering with evidence, in violation of R.C. 2921.12.
 {¶ 9} Prior to trial, the state dismissed the charges against one of the codefendants, Kelly Miller, and another codefendant, Marc Crockett, entered a guilty plea to the charges against him. Both Ms. Miller and Crockett testified at trial against Jonas Miller and the two other codefendants, Derrik McGee and Keely Jaeger.
 {¶ 10} According to Marc Crockett, Jonas Miller invited him to the Nonnenmacher party, told him about the safe, asked him to participate in stealing it, and showed McGee and him where the safe was located in the Nonnenmacher home. Crockett testified that he and McGee removed the safe from the Nonnenmacher's home, put it in the back seat of Kelly Miller's car, and Kelly Miller drove him, Jonas Miller, McGee, and Keely Jaeger to Ms. Miller's aunt's home in West Virginia. Crockett testified that he and McGee put the safe in the home's garage where he, Jonas Miller, and McGee used a hammer, saws, and metal bars to force open the safe. Crockett testified that Jonas Miller and McGee removed jewelry, guns, and coins from the safe, and then Jonas Miller and Crockett cashed in the coins at a Kroger store. Crockett stated that he, Jonas Miller, and McGee threw the empty safe over a bridge into a creek. The safe was subsequently recovered by law enforcement personnel and admitted into evidence. Crockett testified that Jonas Miller had a cast on his arm at the time the offenses occurred.
 {¶ 11} The state presented a surveillance videotape from the Kroger store corroborating that Crockett and Jonas Miller were at the store with bags of coins; the videotape showed that Miller had a cast on his arm at the time. The state also presented testimony from Marcos Alvarez, Ms. Miller's young cousin who sometimes stayed at the West Virginia home where the five defendants went after the Nonnenmacher party. Alvarez testified that one early morning in February 2005 he heard loud banging coming from his mother's garage and shortly thereafter observed Jonas Miller, McGee, Crockett, and Jaeger standing around a safe in the garage of his mother's home with "bars" on the floor near the safe in an apparent attempt to open it.
 {¶ 12} A jury found Miller guilty of theft and safecracking, and the trial court sentenced him to an 11-month term of imprisonment for the theft offense and a 17-month term of imprisonment for the safecracking offense, to be served concurrently.
 II. Assignments of Error {¶ 13} Miller appeals from the judgment entry of conviction, presenting the following assignments of error:
 FIRST ASSIGNMENT OF ERROR
 The trial court erred, and deprived Mr. Miller of his right to a fair trial, when it admitted unfairly prejudicial other act evidence demonstrating that Mr. Miller was not a law-abiding citizen in contravention of Ohio Evid.R. 404(B), 403(A), Ohio R.C. 2945.59, and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.
 SECOND ASSIGNMENT OF ERROR
 Instances of prosecutorial misconduct, which occurred throughout Mr. Miller's criminal trial, deprived him of his right to a fair trial.
 THIRD ASSIGNMENT OF ERROR
 Jonas Miller's convictions were against the manifest weight of the evidence.
 FOURTH ASIGNMENT OF ERROR
 Jonas Miller was deprived of his right to the effective assistance of trial counsel, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.
 FIFTH ASSIGNMENT OF ERROR
 The trial court erred when it imposed a sanction of five years of postrelease control in the judgment entry of conviction, after correctly advising Mr. Miller at the sentencing hearing of a possible three-year period of postrelease control for his conviction of a fourth-degree felony.
 III. Admission of "Other Act" Evidence {¶ 14} In his first assignment of error, Miller contends the trial court committed plain error depriving him of a fair trial when it admitted inadmissible "other act" evidence.
 {¶ 15} Evidence of acts different from those for which the defendant is on trial is generally not admissible to show the defendant's character or propensity to commit crime, but may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B); R.C. 2945.59. The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See State v. Curry
(1975), 43 Ohio St.2d 66, 68.
 {¶ 16} Miller contends evidence that he broke his arm in a bar fight and a detective's "recognition" of him in the Kroger store's videotape conveyed the message that he was not a law-abiding citizen, and therefore guilty of the charged offenses.
 {¶ 17} Because Miller failed to object to the admission of the allegedly improper "other act" evidence, he has waived all but plain error. See Crim. R. 52(B). Crim. R. 52(B) states that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Ohio Supreme Court has cautioned that we are to take notice of plain error under Crim.R. 52(B) with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. The plain error doctrine permits correction of judicial proceedings only when error is clearly apparent on the face of the record and is prejudicial to the appellant.
 {¶ 18} Regardless, neither the oblique reference to the fact that Miller had broken his arm in a bar fight nor the detective's "recognition" of him in the Kroger surveillance videotape resulted in a manifest miscarriage of justice. The evidence did not clearly indicate that Miller had previously been involved in prior criminal activity. Moreover, even if the jury could have inferred from the evidence that Miller had experienced a "brush with the law" in the past, the evidence was not so prejudicial that its admission resulted in a miscarriage of justice in light of the other evidence in this case. See our discussion of the facts above and the weight of the evidence below.
 {¶ 19} The trial court did not commit plain error by admitting this evidence. Therefore, we overrule appellant's first assignment of error.
 IV. Prosecutorial Misconduct {¶ 20} In his second assignment of error, Miller contends the prosecutor engaged in misconduct and deprived him of a fair trial by vouching for the credibility of Marc Crockett, the state's primary witness, and by arguing facts that were not in evidence.
 {¶ 21} The test for prosecutorial misconduct is whether the alleged remark was improper and, if so, whether it prejudicially affected the substantial rights of the defendant. State v. Smith (2000),87 Ohio St.3d 424, 442. "The touchstone `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78.
 {¶ 22} Miller contends that the prosecutor's improper comments expressing his personal opinion on the veracity of the state's witnesses began in voir dire, when he told the jury that if Marc Crockett were his only witness, "then I'd be in a world of hurt in this case."
 {¶ 23} Because McGee failed to object at trial to the allegedly improper comment, he has waived all but plain error. See Crim R. 52(B);State v. Slagle (1992), 65 Ohio St.3d 597, 604; State v. Landrum (1990),53 Ohio St.3d 107, 111; State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 24} The prosecutor's comment in voir dire was clearly not an expression of personal opinion vouching for Crockett's credibility. If anything, it called to the jurors' attention Crockett's weakness as a state's witness due to his extensive criminal record, his plea deal with the state, and his involvement in the crimes. While the statement might be construed to mean that the state's other witnesses were more credible than Crockett, it does not amount to improper vouching for witness credibility. It simply informed the jury that the state had other evidence to support its case. A prosecutor's statement on witness credibility is not an improper voucher where it neither implies knowledge of facts outside the record nor places the prosecutor's personal credibility at issue. State v. Keene (1998), 81 Ohio St.3d 646,666.
 {¶ 25} Miller next cites comments by the prosecutor during closing argument allegedly vouching for the credibility of the state's witnesses, e.g., that Marc Crocket was "being truthful" and that the state's witnesses were "consistent" in their versions of what happened. Again, Miller failed to object to these comments, waiving all but plain error. Slagle, supra.
 {¶ 26} The prosecutor is entitled to a certain degree of latitude in closing argument. Smith, supra at 442-443, citing State v.Liberatore (1982), 69 Ohio St.2d 583, 589. Closing arguments must be viewed in their entirety to determine whether the disputed remarks were unfairly prejudicial. State v. Moritz (1980), 63 Ohio St.2d 150, 157.
 {¶ 27} When viewed in context, the comments by the prosecutor did not personally vouch for Crockett's credibility. Instead, the prosecutor argued that "from all of the evidence, taken together, and all thewitnesses' testimony, the jury can conclude that Marc Crockett was being truthful". The prosecutor's other references to "being truthful" also expressly commented on what the evidence showed about Crockett's credibility ("And that shows that Marc Crockett is being truthful. It's evidence that Marc Crockett is being truthful . . ."). Because the prosecutor's comments regarding Crockett's credibility were based on what the evidence showed, the comments were not improper.
 {¶ 28} Miller further complains that the prosecutor improperly commented about the state's plea agreement with Marc Crockett. However, the Ohio Supreme Court has stated that "prosecutors can elicit or disclose information about plea agreements `to blunt or foreclose unfavorable cross-examination revealing that [witnesses] agreed to testify in exchange for favorable treatment by the prosecutor.'"State v. Skatzes (2004), 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 183, citing State v. Cornwe (1999), 86 Ohio St.3d 560. Accordingly, comments by the prosecutor regarding the plea bargain were not improper. Id.
 {¶ 29} Next, Miller claims that in his closing argument the prosecutor argued facts not in evidence. He argues the prosecutor misstated evidence regarding statements Miller and Crockett made to the police. However, Miller does not specifically identify the prosecutor's alleged misstatements or explain how they were prejudicial to him and denied him a fair trial. It is not up to this Court to discover and rationalize the basis for appellant's claim; the claims are thus deemed waived. See App.R. 16(A)(3).
 {¶ 30} In sum, none of the instances cited by Miller, either individually or collectively, amounts to prosecutorial misconduct. Miller received a fair trial, and his rights were not prejudiced by the remarks of the prosecutor. Because the prosecutor's remarks were not improper, they did not amount to error. Accordingly, we overrule the second assignment of error.
 V. Manifest Weight of the Evidence {¶ 31} In his third assignment of error, Miller asserts that his convictions are against the manifest weight of the evidence. Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict.State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id., citing State v. Martin (1983), 20 Ohio App.3d 172,175. A new trial should occur only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Bethel,110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 100, citing Martin, at 175. We will not reverse a conviction so long as the State presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy, 84 Ohio St.3d 180, 193-194, 1998-Ohio-533;State v. Eley (1978), 56 Ohio St.2d 169, syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997),80 Ohio St.3d 89.
 {¶ 32} Miller specifically contends that his convictions are against the manifest weight of the evidence because Marc Crockett, the state's primary witnesses, was not credible. Miller argues that the jury should not have believed Crockett because he admitted that he had an extensive prior criminal record, including convictions for burglary, theft, possession of a stolen vehicle, safecracking, possession of criminal tools, and multiple convictions for breaking an entering. Miller contends Crockett also lacked credibility because his testimony was presented as the result of a plea bargain in which Crockett agreed to testify against Miller and the other codefendants in exchange for greatly reduced sentences in this and an unrelated theft case.
 {¶ 33} In instructing the jury on credibility, the trial court cautioned the jury that "the admitted or claimed complicity of a witness may affect his credibility and may make his testimony subject to grave suspicion and require that it be weighed with great caution." The court further cautioned the jury that "[a]n accomplice may have special motives in testifying, and you should carefully examine an accomplice's testimony and use it with great caution and view it with grave suspicion."
 {¶ 34} The weight to be given evidence, and the credibility to be afforded Crockett's testimony, are issues to be determined by the trier of fact. State v. Dye (1998), 82 Ohio St.3d 323, 329; State v.Frazier (1995), 73 Ohio St.3d 323, 339. The jury "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 35} After being advised of Crockett's prior criminal record, his admissions as to culpability in the instant offenses, and the plea bargain he struck in this case, and after receiving the court's cautionary instructions on witness credibility, the jury apparently believed Crockett's testimony implicating Miller. We will not second guess the jury on the matter of Crockett's credibility, especially where Crockett's key testimony against Miller was corroborated by other witnesses and evidence. Marcos Alvarez testified that Miller was standing around the safe in the garage of his mother's West Virginia home. The Kroger surveillance videotape showed Miller, wearing a cast on his arm, at the Kroger store with bags of coins.
 {¶ 36} This is not a case in which the evidence weighs heavily against Miller's convictions; the jury verdict was not a manifest miscarriage of justice. Martin, supra. Accordingly, we overrule appellant's third assignment of error.
 VI. Ineffective Assistance of Trial Counsel {¶ 37} In his fourth assignment of error, Miller claims that he received the ineffective assistance of trial counsel.
 {¶ 38} The Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean that a criminal defendant is entitled to the "reasonably effective assistance" of counsel. Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to prevail on a claim of ineffective assistance of counsel, appellant must show (1) deficient performance, i.e., performance falling below an objective standard of reasonable representation, and (2) resulting prejudice, i.e., a reasonable probability that but for counsel's error, the proceeding's result would have been different. SeeStrickland, supra 466 U.S. at 687-688, 80 L.Ed.2d at 693; State v.Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus. Failure to establish either element is fatal to the claim.Strickland, 466 U.S. at 687, 80 L.Ed.2d at 693.
 {¶ 39} When considering whether trial counsel's representation amounts to a deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v. Hasting (1983), 461 U.S. 499,508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96.
 {¶ 40} Miller contends that his trial counsel's performance was deficient because counsel failed to object to (1 ) "other act" evidence, identified in the first assignment of error, which conveyed to the jury that Miller was not a law-abiding citizen, and (2) the instances of the prosecutor's misconduct, identified in the second assignment of error. Because we have concluded in the first and second assignments of error that appellant's claims concerning improper "other act" evidence and prosecutorial misconduct are meritless, Miller's trial counsel was not deficient in failing to object to them. Accordingly, Miller did not receive ineffective assistance of counsel in this regard.
 {¶ 41} Miller additionally claims, however, that his trial counsel's performance was deficient because counsel failed to object to an improper comment made by codefendant McGee's counsel during her opening statement to the jury: e.g., that McGee told the police Miller had been involved in trying to open the stolen safe. Miller asserts that his trial counsel should have objected to the comment and moved for a mistrial because McGee did not testify and his purported statement was not admitted into evidence during the trial.
 {¶ 42} Assuming arguendo that counsel's failure to object to the foregoing statement implicated Miller's right to confrontation, it is not reasonably probable that but for counsel's failure to object the results of the trial would have been different. First, the court instructed the jury that opening statements were not evidence. Second, Marc Crockett's testimony established Miller was involved in stealing and trying to open the safe. That and other testimony about Miller's participation in the crime make it clear beyond a reasonable doubt that counsel's failure to object did not affect the outcome of the case.
 {¶ 43} Miller was not deprived of a fair trial by the ineffective assistance of his trial counsel. Accordingly, this assignment of error is overruled.
 VII. Postrelease Control Sanction {¶ 44} In his final assignment of error, Miller contends the trial court erred when it imposed a sanction of five years of postrelease control in the judgment entry of conviction after advising him at the sentencing hearing of a possible three-year period of postrelease control for his conviction of a fourth degree felony.
 {¶ 45} Here, Miller was convicted of safecracking, a fourth-degree felony, and theft, a fifth-degree felony. At the sentencing hearing, the trial court correctly advised him that he could be required to serve up to three years of postrelease control. See R.C. 2967.28. The trial court further properly explained that Miller could be required to serve an additional term of up to half of his maximum prison term if he ever violates the terms of his postrelease control. Id. Thus, the trial court properly notified him at the sentencing hearing about the terms and conditions of postrelease control and it was required to incorporate that notice into its journal entry imposing sentence. R.C. 2967.28;State v. Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085, paragraph one of the syllabus. However, in the journal entry of conviction, the trial court incorrectly imposed a five-year postrelease control sanction, rather than the three year period of post-release control that was proper.
 {¶ 46} The state candidly concedes that the trial court erred in imposing a sanction of five years of postrelease control in the journal entry of conviction. Accordingly, we sustain Miller's fifth assignment of error and remand this matter to the trial court to correct the judgment entry of conviction to reflect that Miller is subject to three years of postrelease control.
 {¶ 47} Having overruled Miller's first four assignments of error and sustained his fifth assignment of error, we affirm the convictions but remand for correction of the sentence on the judgment entry of conviction.
CONVICTIONS AFFIRMED AND CASE REMANDED FOR MODIFICATION OF JUDGMENT ENTRY OF CONVICTION.
 JUDGMENT ENTRY
It is ordered that the CONVICTIONS BE AFFIRMED AND THE CASE BE REMANDED FOR MODIFICATION OF JUDGMENT ENTRY OF CONVICTION and that the Appellant and Appellee split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and McFarland, J.: Concur in Judgment and Opinion.
William H. Harsha, Judge