[Cite as *State v. Fender*, 2014-Ohio-19.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| AARON FENDER | : | Case No. 2013 AP 12 0072 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:             Appeal from the Court of Common
                                     Pleas, Case No. 2012 CR 03 0085


JUDGMENT:                            Affirmed


DATE OF JUDGMENT:                    January 7, 2014


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

MICHAEL J. ERNEST                     DEREK LOWRY
125 East High Avenue                  116 Cleveland Avenue, NW
New Philadelphia, OH  44663           Suite 800
                                      Canton, OH  44702-1732

*Farmer, J.*

{¶1} On March 30, 2012, the Tuscarawas County Grand Jury indicted appellant, Aaron Fender, on one count of aggravated arson in violation of R.C. 2909.02 and one count of insurance fraud in violation of R.C. 2913.47. Said charges arose from a fire that destroyed appellant's home.

{¶2} A jury trial commenced on October 23, 2012. The jury found appellant guilty as charged. By judgment entry filed December 14, 2012, the trial court sentenced appellant to an aggregate term of three years in prison.

{¶3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶4} "THE TRIAL COURT ERRED IN CONDUCTING A SECOND VOIR DIRE TO REPLACE JURORS REMOVED AFTER THE COMMENCEMENT OF THE TRIAL."

II

{¶5} "APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."

III

{¶6} "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I

{¶7} Appellant claims the trial court erred in conducting a second voir dire to replace jurors instead of dismissing the entire panel. We disagree.

{¶8} On the first day of trial, a jury panel was sworn in, the trial court issued preliminary instructions, and the trial court recessed for the evening. T. at 119-142. The next day, before opening statements or any testimony, a juror informed the trial court that due to a grave illness in her family, she could not continue and asked to be excused. T. at 143-144. The state objected, defense counsel gave no opinion, and the trial court excused the juror. T. at 149-150. Thereafter, another juror's vacation plans became an issue and another juror expressed an issue with his work schedule. T. at 151, 166-167. The trial court presented various options, including continuing the case for two weeks. The trial court decided to bring in extra jurymen for the following day. T. at 168-169. The next morning, defense counsel objected to the procedure. T. at 175-176. The trial court went ahead with the additional jurymen for the replacement of the jurors, and provided extra peremptory challenges for each new juror. T. at 177-178. Defense counsel chose not to use the extra peremptory challenges. T. at 234. The trial court administered a second oath to the replacement jurors. T. at 257.

{¶9} R.C. 2945.29 governs "Jurors becoming unable to perform duties" and states the following:

> If, before the conclusion of the trial, a juror becomes sick, or for other reason is unable to perform his duty, the court may order him to be discharged. In that case, if alternate jurors have been selected, one of them shall be designated to take the place of the juror so discharged. If, after all alternate jurors have been made regular jurors, a juror becomes too incapacitated to perform his duty, and has been discharged by the

court, a new juror may be sworn and the trial begin anew, or the jury may be discharged and a new jury then or thereafter impaneled.

{¶10} Based upon the procedural posture of the case, we find the trial court followed the statute. As noted above, opening statements were not made and no witnesses were sworn in. The trial court called in additional jurymen, afforded each side additional peremptory challenges, all of which were not used, and started the trial anew. We note Crim.R. 24 which governs "Trial jurors" implicitly respects a trial court's control and management of the jury.

{¶11} Assignment of Error I is denied.

II

{¶12} Appellant claims he was denied the effective assistance of trial counsel because his trial counsel permitted his unwillingness to take a polygraph test to come in as evidence. We disagree.

{¶13} The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2

O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶14} We note this court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." *State v. Post,* 32 Ohio St.3d 380, 388 (1987).

{¶15} Appellant's wife, Laura Fender, testified appellant was willing to take a polygraph test, but did not take one on the advice of counsel.  T. at 962.  On direct examination, appellant testified to the same.  T. at 1085-1087.  Appellant now argues his trial counsel should have requested a limiting instruction.

{¶16} During opening statement, the defense strategy was to disclaim the testimony of witness Josh Liggett and portray appellant as innocent (T. at 304):

Now, we have our own theories as to why Joshua Liggett did what he did.  But frankly, I don't know why Joshua Liggett said what he said and why he did what he did.  I don't know the answer.  Maybe he was upset with my client for something that happened years ago.  Maybe he was upset about something that he perceived happened.  I just don't know.

But what I can tell you is when you match Josh's story with the facts things do not add up, and certainly don't add up to reasonable doubt.

As I've indicated, you're going to hear from my client, Aaron Fender, today. Well, not today, next week probably. And he's going to sit right here in this chair and he's going to look at each of you and he's going to say something like 'I did not start this fire.' He's going to tell you where he was, he's going to account for his time, he's going to say 'I don't know how this fire started. I know what the Fire Marshal told me,' and that's what he's going to say. Because my client, Aaron Fender, did not start this fire.

{¶17} By using that which cannot be used and proclaiming one's innocence with a plea for a polygraph test, the defense attempted to bolster appellant's credibility and innocence.

{¶18} Upon review, we do not find a deficiency in defense counsel's trial strategy.

{¶19} Assignment of Error II is denied.

III

{¶20} Appellant claims his convictions were against the sufficiency and manifest weight of the evidence as the evidence suggested two different theories for the fire: one, an accidental fire or two, he purposely started the fire. We disagree.

{¶21} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State*

*v. Jenks,* 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶22} Appellant was convicted of aggravated arson in violation of R.C. 2909.02(A)(2) which states: "No person, by means of fire or explosion, shall knowingly do any of the following***[c]ause physical harm to any occupied structure." Appellant was also convicted of insurance fraud in violation of R.C. 2913.47(B) which states the following:

(B) No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall do either of the following:

(1) Present to, or cause to be presented to, an insurer any written or oral statement that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive;

(2) Assist, aid, abet, solicit, procure, or conspire with another to prepare or make any written or oral statement that is intended to be presented to an insurer as part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive.

{¶23} The lynchpin of the state's case was the testimony of Josh Liggett. Mr. Liggett was a friend and former co-worker of appellant. T. at 307. Mr. Liggett was staying in appellant's home while he was working on his relationship with his ex-wife. T. at 308, 316. Appellant was driving Mr. Liggett's truck as he was camping in the area. T. at 317. The day before the fire, appellant asked Mr. Liggett if they could retrieve firewood from Mr. Liggett's father's property. T. at 316. While they were loading the firewood onto the truck, appellant told Mr. Liggett " 'I think I'm going to burn down the house tonight.' " T. at 318. Appellant asked Mr. Liggett for cash so as not to use his debit card to purchase gas because they "can trace that." *Id.*

{¶24} Mr. Liggett was concerned about "his stuff" at appellant's house and they struck a deal wherein Mr. Liggett would receive $10,000.00 from the insurance proceeds. T. at 319. The two drove to appellant's home and Mr. Liggett removed some of his personal items from the house. T. at 320. Appellant backed the truck into the garage and placed a gas can under the wood. *Id.* Appellant asked Mr. Liggett if the gas can was visible as he did not want his wife to see it. *Id.* Mr. Liggett stated no, the gas can was "hid pretty good" and then he left. *Id.*

{¶25} The next day, appellant sent a text to Mr. Liggett informing him that his "house burnt last night." T. at 322. A few days after the fire, appellant told Mr. Liggett how "it all went down." T. at 325. Appellant explained he started the fire with the gas in the basement home theatre and stairway and up through the kitchen and front hallway. *Id.* Appellant stated the arson investigator's dog stopped short of the point of origin. T. at 327.

{¶26} A couple of weeks after the fire, Mr. Liggett was contacted by law enforcement. T. at 333. Mr. Liggett ended up speaking to Tuscarawas County Sheriff Deputy Orvis Campbell and told him everything he knew in exchange for immunity. T. at 335, 813-814.

{¶27} As time passed, Mr. Liggett did not receive his promised money. T. at 335-336. Thereafter, appellant texted him a photograph of cash, told him he was receiving $8,000.00 of the promised $10,000.00, and the cash would be in his truck. T. at 336-338. Mr. Liggett found the money stuffed in a box in his truck. T. at 339-340. Mr. Liggett turned the money over to the police. T. at 340-343.

{¶28} Mr. Liggett testified after retrieving his truck from appellant, he discovered a bag underneath the driver's seat containing photographs of appellant's children, kids' journals, a car title, social security cards, and some jewelry. T. at 347-348. Appellant asked Mr. Liggett to store the items and later retrieved them. T. at 348.

{¶29} Mr. Liggett's ex-wife, Amber Liggett, testified Mr. Liggett told her before the fire about appellant's plan to burn down his house. T. at 463. She read some of the text messages appellant sent to Mr. Liggett. T. at 464-465. She corroborated the fact that appellant was in possession of Mr. Liggett's truck, and the finding of the bag under the driver's seat. T. at 467-469.

{¶30} Apart from appellant's statements and texts to Mr. Liggett and taped telephone conversations with Mr. Liggett, there was evidence of motive and opportunity. As for motive, appellant had attempted to sell his home in 2010, but had no offers. T. at 313-314. Appellant wanted a new house because of problems with the well, dryer, upstairs toilet, lack of air conditioning, and most importantly, his wife's affair with a neighbor. T. at 312-313. Regarding opportunity, appellant told Mr. Liggett he started the fire at 10:30 p.m. T. at 346-347. He had left the campsite on a "beer run" and told his wife it was taking a long time because his debit card wouldn't work and he couldn't find the kind of drinks she wanted. T. at 326. He parked Mr. Liggett's truck at an old bed and breakfast across from his home. *Id.* These events were substantiated by a neighbor, Kimberly Smart, who observed Mr. Liggett's truck at appellant's home on the evening in question and appellant's brothers-in-law and father-in-law who did not see appellant around the campsite that evening or until "much later" in the evening. T. at 494-497, 508-509, 524, 527, 532, 534.

{¶31} Although the conviction rested primarily on Mr. Liggett's credibility and alleged immunity, his credibility was substantiated by the corroborating testimony of his ex-wife and appellant's neighbor and in-laws. All of this testimony was coupled with the testimony of James Roudebush, a fire investigator with the City of Dover, who testified there was an indication of an accelerant used in the fire so he contacted the State Fire Marshal's office. T. at 583. John Weber, an arson investigator with the State Fire Marshal's office, initially opined the fire started in the garage. T. at 658. Following his investigation and interviews of the Liggetts, Mr. Weber opined the fire started in the center portion of the house where the stairwell was located. T. at 663. Mr. Weber concluded the fire was "an incendiary event, an act of arson." T. at 660. Bruce Boone of State Farm Insurance testified appellant submitted a proof of loss form indicating he did not cause the loss of his home. T. at 776.

{¶32} Upon review, we conclude there was sufficient, credible evidence, if believed by the jury, to sustain the convictions.

{¶33} Assignment of Error III is denied.

{¶34} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Wise, J. concur.

SGF sg 11/26