[Cite as *State v. Wymer*, 2022-Ohio-4795.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

STATE OF OHIO,

          Plaintiff-Appellee,

- v -

EDWARD WYMER,

          Defendant-Appellant.

CASE NO. 2021-T-0014

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 00684

## O P I N I O N

Decided: December 30, 2022
Judgment: Affirmed in part and reversed in part; remanded

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Wesley C. Buchanan*, Buchanan Law, Inc., 50 South Main Street, Suite 625, Akron, OH 44308 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1}   Appellant, Edward Wymer, appeals his convictions for multiple counts of rape and gross sexual imposition. For the following reasons, we affirm in part, reverse in part, and remand this matter for further proceedings consistent with this decision.

{¶2}   On September 21, 2020, Wymer was indicted on the following charges: gross sexual imposition, a third-degree felony, in violation of R.C. 2907.05(A)(4) and (C)(2), with a sexually violent predator specification pursuant to R.C. 2941.148 (counts one to three and five to seven); rape, a first-degree felony, in violation of R.C. 2907.02(A)(1)(b) and (B), with the additional finding that Wymer compelled the victim to

submit by force or threat of force pursuant to R.C. 2971.03(B)(1)(c) and a sexually violent predator specification pursuant to R.C. 2941.148 (count four); rape, a first-degree felony, in violation of R.C. 2907.02(A)(1)(b) and (B), with the additional findings that Wymer compelled the victim to submit by force or threat of force pursuant to R.C. 2971.03(B)(1)(c) and that the victim was less than ten years of age pursuant to R.C. 2971.03(B)(1)(b), with a sexually violent predator specification pursuant to R.C. 2941.148 (count eight); and gross sexual imposition, a fourth-degree felony, in violation of R.C. 2907.05(A)(4) and (C)(2), with a sexually violent predator specification pursuant to R.C. 2941.148 (counts nine and ten).

{¶3}  On January 11, 2021, the state filed a motion to amend the indictment. Specifically, the state sought to correct what it deemed a "clerical error" contained in counts nine and ten of the indictment.  The state maintained that the indictment incorrectly read "that the alleged conduct with regard to Counts Nine and Ten is in violation of RC 2907.05(A)(4) [the victim is less than thirteen years of age], a felony of the third degree." The state maintained this was incorrect, and the conduct should have been "alleged as a violation of RC 2907.05(A)(1), that the offender purposely compelled the victim to submit by force or threat of force, a felony of the fourth degree."[1]

{¶4}  On the same date, the state filed a bill of particulars.  With respect to counts nine and ten, the state asserted that Wymer "purposely compelled the [victim] to submit by force or threat of force" and that the "child victim was thirteen years old at the time of the incident."

---

1.  Although citing subsection (A)(4) instead of (A)(1), the September 21, 2020 indictment correctly identified the degree of the offense for counts nine and ten as felonies of the fourth degree.

2

Case No. 2021-T-0014

{¶5} On February 18, 2021, Wymer filed a brief in opposition to the motion to amend the indictment.

{¶6} On February 19, 2021, the Friday before the trial starting Monday, a superseding indictment was filed which included the amended counts nine and ten. Additionally, the sexually violent predator specifications were omitted from these two counts.

{¶7} Between February 22 and 24, 2021, Wymer's case was tried before a jury.

{¶8} The first witness to testify on behalf of the state was M.K. (dob 10/12/2006). She testified that she knew Wymer as "Uncle Eddie," a friend of her mother. In November 2019, Wymer came to stay with M.K.'s family in Niles. One night in November, M.K. awoke to find Wymer sitting on her bed and "rubbing"/"touching" her vagina and buttocks. She told him to stop a couple of times, and he left the room. M.K. informed her parents that night, and her teacher the next day, that Wymer had touched her.

{¶9} Sonya Kelleston testified that she is M.K.'s mother. She has known Wymer since childhood. She and her husband allowed Wymer to stay at their apartment in November 2019 because he was homeless. Early one morning, M.K. came into her bedroom and said that Wymer had touched her, but Kelleston did not comprehend what she was being told. A day or more later, after M.K.'s school contacted Kelleston, she confronted Wymer. He said that he had heard M.K. crying and went into her room to comfort her.

{¶10} R.B. (dob 2/7/2007) testified that she has known Wymer her whole life as "Uncle Eddie." When she was 11 years old, Wymer came to stay with her family in Warren for a number of weeks. R.B. recalled an incident when she and her infant sister were

3

home alone with Wymer, and he tickled her inner thighs and vagina although she told him to stop. When he finished, he gave her five dollars and told her not to tell anyone. On another occasion, R.B. described Wymer holding her hands above her head while fondling her breasts and vagina. He then performed painful cunnilingus upon her. When she told him to stop, he covered her mouth.

{¶11} When R.B. learned that Wymer was staying at the home of her cousin, M.K., R.B. told her that "he touched [R.B.] in a wrong way." M.K. corroborated the fact that R.B. warned her about Wymer. R.B. did not reveal to an adult what Wymer had done to her until after children services contacted her mother.

{¶12} In February 2019, a message was sent to Wymer from R.B.'s Facebook Messenger account asking if he was coming to her birthday party. R.B. testified that her mother sent the message.

{¶13} Stacey Browning testified that she is R.B.'s mother and that she has known Wymer since R.B. was a child. She allowed Wymer to stay with her in the summer of 2018 because he was having issues with the person he was living with at the time. She testified that, after Wymer had left her home, R.B. began to have trouble sleeping, to eat less, and to perform poorly at school. When Wymer failed to come to R.B.'s birthday party in 2019, Browning messaged him from R.B.'s account asking why he did not attend.

{¶14} L.F. (dob 5/25/2010) testified that she knows Wymer as "Uncle Eddie." Wymer lived with her family in Cortland for several years. When she was eight years old, she woke up and found Wymer in her room. She described Wymer touching her breasts and buttocks and poking her vagina so that it hurt. She testified this happened on different days. After the incidents with Wymer, L.F. and her siblings were removed from the home

4

because her father had done something to her stepsister, and he was not supposed to be living with them. At this time, she revealed that Wymer had touched her.

{¶15} Adam DiCristofaro, an investigator for Trumbull County Children Services, conducted forensic interviews with M.K. and R.B.

{¶16} Melanie DeLuca, an investigator for Trumbull County Children Services, conducted a forensic interview with L.F. She testified that L.F. disclosed the abuse in February 2019.

{¶17} Detective John Weston, an officer with the Cortland Police Department, interviewed and took a statement from Wymer regarding L.F.'s allegations, which were published to the jury. Weston was at L.F.'s home when she and her siblings were removed. He testified that L.F. was upset and ran to Wymer, who helped her to go with the caseworkers.

{¶18} Monique Malmer, a certified nurse practitioner with the Akron Children's Hospital Child Advocacy Center, performed medical examinations of M.K. and R.B., but L.F. refused to be examined. Malmer testified about the grooming process used by child molesters and phenomenon of delayed disclosure of sexual abuse (occurring in about 72% of reported cases). She also testified that physical evidence of abuse is uncommon (present in fewer than 10% of cases).

{¶19} Malmer observed DeLuca's interview of L.F. She noted L.F.'s description of Wymer "poking" the vaginal area and of the pain it caused and opined that the pain was caused by contact with the hymen, which could only occur with labial penetration.

{¶20} At the conclusion of the evidence, the jury returned guilty verdicts on all counts of the indictment. At Wymer's request, the sexually violent predator specifications

5

Case No. 2021-T-0014

were submitted to the trial court for determination. The court declared Wymer a sexually violent predator pursuant to R.C. Chapter 2971.

{¶21} Following a sentencing hearing, the trial court sentenced Wymer as follows: For counts one to three and five to seven (third-degree gross sexual imposition), Wymer was sentenced to serve prison terms of 60 months. For counts four and eight (rape), Wymer was sentenced to life in prison without the possibility of parole. For counts nine and ten (fourth-degree gross sexual imposition), Wymer was sentenced to serve a prison term of 18 months. The court ordered all sentences to be served consecutively for an aggregate sentence of two consecutive life sentences, without the possibility of parole, and 396 months. Wymer's sentence was memorialized in a written entry on sentence on March 17, 2021.[2]

{¶22} On appeal, Wymer assigns the following errors.[3]

[1.] The trial court erred by not granting a continuance to Edward.

[2.] The evidence against Edward was insufficient to support his convictions.

[3.] Edward's convictions were not supported by the manifest weight of the evidence.

[4.] The trial court erred by admitting State's Exhibit 2 into evidence.

[5.] Edward received ineffective assistance of counsel.

{¶23} In the first assigned error, Wymer argues that the trial court abused its discretion by denying his motion for continuance, made orally on February 19, 2021, following the return of the superseding indictment.

---

2. On April 21, 2021, a nunc pro tunc entry on sentence was issued correcting the degree of counts nine and ten from third-degree to fourth-degree felonies.

3. For clarity, the assignments of error will be considered out of order.

6

**{¶24}** "It is a basic due process right and indeed essential to a fair trial that a defense counsel be afforded the reasonable opportunity to prepare his case." *State v. Sowders*, 4 Ohio St.3d 143, 144, 447 N.E.2d 118 (1983), citing *White v. Ragen*, 324 U.S. 760, 763-764, 65 S.Ct. 978, 89 L.Ed. 1348 (1945); *Hawk v. Olson*, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); and *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

**{¶25}** Here, on the Friday just prior to the Monday trial, the superseding indictment was filed, altering the ninth and tenth counts from alleging that the victim was under 13 to alleging that Wymer compelled the victim to submit by force or threat of force. Although the superseding indictment lessened the degree of these two counts, it substantially altered the charges.

**{¶26}** Wymer cites Crim.R. 7(D) with respect to whether a continuance was appropriate. Crim.R. 7(D) provides, in its entirety:

> Amendment of indictment, information, or complaint. The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint. No action of the court in refusing a

7

continuance or postponement under this division is reviewable except after motion to grant a new trial therefor is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.

{¶27} In *State v. Hall*, 11th Dist. Portage No. 2002-P-0048, 2003-Ohio-1979, this court read the second sentence of Crim.R. 7(D) in isolation and characterized a secret indictment filed shortly before trial as an amended indictment subject to that rule. *Hall* at ¶ 7, 14. If the superseding indictment were considered an "amendment" by the trial court pursuant to Crim.R. 7(D), Wymer would have been "entitled * * * to a reasonable continuance" unless it was clear from the whole proceedings that he had not been misled or prejudiced by the amendment or that his rights would be fully protected by proceeding with the trial just three days after learning of the amendment. *See Hall* at ¶ 16, citing *State v. O'Brien*, 30 Ohio St.3d 122, 126, 508 N.E.2d 144 (1987) ("adding an essential element to the indictment necessarily changes the substance of the indictment").

{¶28} However, reading Crim.R. 7(D) in context, it provides the applicable procedure where the trial court amends the indictment, which neither occurred in this case, nor in *Hall*. Therefore, our reliance on Crim.R. 7(D) in *Hall* was misplaced

{¶29} Accordingly, we review whether a continuance was proper without application of Crim.R. 7(D). R.C. 2945.02 provides, "No continuance of the trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance." Further, "'[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *State v. Unger*,

8

67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981), quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *Unger* at syllabus. "An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *Id.* at 67. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶30} Here, defense counsel orally requested a continuance on the day the superseding indictment was filed, stating:

> [T]here was a Superseding Indictment filed today and reported today that changes the theory on two of the counts from under 13 to force. I think my client is entitled to some time to meet with me about that issue, maybe retool our defense and, frankly, is entitled to notice and due process.

{¶31} After the trial court denied the motion to continue, defense counsel expounded on the superseding indictment, explaining:

> But, again, my concern with the Superseding Indictment is the fact that we're here on a Friday around lunchtime and we're set to go on Monday, so I don't think my client is going to receive adequate notice of this. I think it changes our strategy because what we're talking about is a simple matter of, what year were you born? And when did this happen? As far as the Defendant's force and other conduct that – frankly, Mr. Wymer and I have not discussed this as to Counts Nine and Ten, which kind of dovetails back to the Motion to Continue that you have denied. That's all I have to say.

{¶32} Wymer was on notice that the state's theory on counts nine and ten did not align with the charges set forth in those counts in the original indictment and that the state had sought amendment of the charges. However, it was not until the business day prior

9

Case No. 2021-T-0014

to trial that Wymer's counsel learned he would be required to defend on the new allegations of force relative to those counts. Defense counsel indicated to the court that he had not had the opportunity to discuss the allegations set forth in the superseding indictment with Wymer or revise the defense.

{¶33} Contrary to the dissent's assertions, the defense did not "force" the state to seek a superseding indictment by challenging the state's motion to amend the indictment—Crim.R. 7(D) precluded the trial court from ordering such an amendment. *See* Crim.R. 7(D) (the trial court may not amend an indictment to change the name or identity of the crime charged) and *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609, ¶ 13 (affirming appellate court's finding of plain error where trial court amended the indictment in violation of Crim.R. 7(D)).

{¶34} Regardless of discussions or motions filed in the trial court, Wymer was not called on to defend against new charges until the Friday before the Monday trial. Wymer and defense counsel were required to prepare only for the charges before them, not potential charges that may never be brought. The dissent fails to recognize that lawyers must allocate already limited time and resources to defend existing charges. We should not place a duty on defense counsel to be fully prepared to immediately defend new charges that *may be* brought if the state elects to present those charges to the grand jury and an indictment is returned.

{¶35} Under these circumstances, the trial court erred in failing to grant the continuance. Accordingly, the first assigned error has merit with respect to the ninth and tenth counts of the indictment.

Case No. 2021-T-0014

**{¶36}** In the fourth assigned error, Wymer argues that the trial court erred by admitting into evidence a videorecording of Detective Weston's interview with Wymer. Wymer contends that "whether or not [he] gave a statement after *Miranda* warnings was not relevant to the proceedings." Appellant's brief at 14.

**{¶37}** Relevant evidence, defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," is admissible at trial. Evid.R. 401 and 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid.R. 403(B).

**{¶38}** "The trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967); *see State Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus ("[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court").

**{¶39}** We find no error in the admission of the video recording. In the interview, Wymer denies the allegations made by L.F., explains his involvement in L.F.'s life, provides information about the presence of L.F.'s father at the home, the possibility of L.F.'s father committing the abuse, and possible motivations for L.F. to make false allegations. The foregoing is certainly relevant to charges involving L.F. brought against Wymer.

**{¶40}** The fourth assigned error is without merit.

11

Case No. 2021-T-0014

**{¶41}** In his second and third assigned errors, Wymer contends there was insufficient evidence to support his convictions and that they were against the weight of the evidence. These assigned errors will be considered jointly.

**{¶42}** Crim.R. 29(A) provides that "[t]he court * * * shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶43}** Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The finding that a conviction is supported by the weight of the evidence presupposes the existence of sufficient evidence to support the conviction. *Id.* at 388; *see Tibbs v. Florida*, 457 U.S. 31, 42-43, 102 S.Ct. 2211, 72

12

L.Ed.2d 652 (1982) ("[a] reversal based on the weight of the evidence * * * can occur only after the State both has presented *sufficient evidence* to support the conviction and has persuaded the jury to convict").

{¶44} First, with respect to the counts of the indictment alleging gross sexual imposition, the convictions on the ninth and tenth counts must be reversed in accordance with our disposition of the first assigned error. We therefore proceed to review the evidence with respect to the remaining counts alleging gross sexual imposition. In order to convict Wymer of gross sexual imposition, the state had to prove, beyond a reasonable doubt, that he had "sexual contact" with another, not his spouse, when the other person was less than 13 years of age (counts one to three and five to seven). R.C. 2907.05(A)(4) and (C)(2). "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶45} In order to convict Wymer of rape, the state had to prove, beyond a reasonable doubt, that he engaged in "sexual conduct" with another, not his spouse, and purposely compelled the other person to submit by force or threat of force when the other person was less than 13 years of age for the purposes of count four and less than 10 years of age for the purposes of count eight. R.C. 2907.02(A)(1)(b) and (B); R.C. 2971.03(B)(1)(c); R.C. 2971.03(B)(1)(b). "'Sexual conduct' means * * * cunnilingus * * * and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal * * * opening of another." R.C. 2907.01(A).

{¶46} R.B.'s testimony was the basis for counts one to three (third-degree gross

13

sexual imposition) and four (rape). Wymer notes certain inconsistencies and/or uncertainties in R.B.'s testimony, such as: an inability to recall which hand Wymer used to restrain and which hand he used to touch her; the point at which Wymer covered her mouth; and her testifying at trial to certain details which she failed to reveal when initially reporting the abuse. Moreover, Wymer points out that R.B.'s mother messaged him when he did not attend her birthday party and felt uncomfortable about R.B.'s grandfather kissing her forehead.

{¶47} R.B. testified that Wymer stayed with her family when she was 11 and, on two occasions, molested her. On the first, he "tickled" her vagina. On the second, he touched her breasts and vagina and then licked her vagina. If believed, this evidence is legally sufficient to support the convictions for gross sexual imposition and rape. While the inconsistencies in R.B.'s testimony, as well as parts of her mother's testimony, have some bearing on R.B.'s credibility, they do not compel the conclusion that Wymer is entitled to a new trial. While an appellate court engages in a limited weighing of the evidence considering challenges based on the manifest weight of the evidence, the court nevertheless shows some deference to the trier of fact's determinations regarding the import and credibility of the evidence. *See State v. Vanover*, 11th Dist. Geauga No. 2020-G-0268, 2021-Ohio-3172, ¶ 33; *State v. Rice*, 2019-Ohio-1415, 135 N.E.3d 309, ¶ 82 (11th Dist.). In the present case, R.B. was consistent with respect to what was done to her and who did it notwithstanding some discrepancies as to how it was done. We further note that, although R.B. did not immediately disclose the abuse to an adult, she warned her cousin M.K. that Wymer "touched [her] in a wrong way," and M.K. corroborated that R.B. told her something "bad" about Wymer.

14

{¶48} L.F.'s testimony was the basis for counts five to seven (third-degree gross sexual imposition) and eight (rape). Wymer asserts that her testimony is not credible because other children were present in the bedroom when the molestation allegedly took place, and there were allegations against another adult in the home (L.F.'s father) toward one of her siblings. Also, she denied running to Wymer when children services was removing her from the home, contrary to the testimony of Detective Weston.

{¶49} L.F. testified that, when she was eight years old, Wymer, on different occasions, touched her "boobs" and squeezed her "butt." She also described him touching her "bottom," the part of her body she uses to go "to the bathroom" when she has to "pee." On an anatomical drawing introduced into evidence, L.F. marked the places he touched, which included the breasts, the buttocks, and the vagina. With respect to her "bottom," she testified that he poked it with his finger, and it hurt. This testimony, if believed, was sufficient to sustain the convictions for gross sexual imposition and rape. As to the weight of this evidence, we do not find L.F.'s testimony incredible, although the circumstances at L.F.'s home were such that one could question her credibility.

{¶50} Finally, Wymer contends that "none of the children testified about actual penetration." Brief of appellant at 12. The issue of penetration is only relevant to the rape charges. With respect to R.B., we note that cunnilingus constitutes "sexual conduct" irrespective of penetration and, thus, the convictions stand. *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 86 ("the act of cunnilingus is completed by the placing of one's mouth on the female's genitals").

{¶51} With respect to L.F., the testimony was that Wymer poked her vagina and it hurt. Nurse Malmer explained that in a girl of L.F.'s age, the hymen is sensitive to the

15

touch. From this evidence it could be inferred that Wymer penetrated her, i.e., that there was an insertion of his finger "into the vaginal * * * opening." Malmer testified that contact with the hymen requires penetration "beyond the labia." Ohio "[c]ourts have consistently held that vaginal penetration is proved when any object is applied with sufficient force to cause the labia majora to spread." *State v. Patterson*, 5th Dist. Tuscarawas No. 2020 AP 12 0025, 2021-Ohio-2387, ¶ 24 (cases cited); *State v. Strong*, 1st Dist. Hamilton Nos. C-100484 and C-100486, 2011-Ohio-4947, ¶ 54 (cases cited).

**{¶52}** The second and third assignments of error are without merit insofar as they relate to all but count nine and ten. Due to our disposition of the first assigned error, we do not reach the merits of Wymer's arguments as to the weight and sufficiency of the evidence with respect to those counts.

**{¶53}** In his fifth assigned error, Wymer argues that he received constitutionally ineffective assistance of counsel.

**{¶54}** "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. With respect to counsel's performance, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The element of prejudice means "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction * * *

16

Case No. 2021-T-0014

resulted from a breakdown in the adversary process that renders the result unreliable."

*Id.*

{¶55} Wymer cites two instances of ineffective assistance. In the first, he claims he was prejudiced by trial counsel's unreasonable "election to have a jury trial during a Level 3 Public Health Emergency." Specifically, "there was a substantial risk of virus transmission associated with holding an in-person jury trial." In such circumstances, it was unreasonable to expect that jurors would be able to keep their promise to remain focused during the proceedings in an environment "that was unsafe to begin with, and only made more unsafe by the trial court's own actions." Brief of the appellant at 16-17. The state counters that the trial court "quite clearly took every necessary precaution possible in order to ensure a safe trial under the local and state guidelines for resuming jury trials." Brief of appellee at 31.

{¶56} We find the argument to be meritless. There is simply no evidence in the record that the pandemic conditions prevented or even hindered any juror from performing the duties expected of a juror.

{¶57} More significantly, trial counsel did object to the trial being held given "the current state of the pandemic" at the time of trial. Trial counsel argued the pandemic as cause for continuing trial:

> We just came out of a very, very difficult time of the pandemic, record cases, not even a couple of weeks ago. Those are on the decline. There's vaccinations being done. I think a continuance of 30, 60, 90 days would probably alleviate some of the COVID concerns I have. Those COVID concerns relate primarily to the jury pool, the venire, and any potential array that we have here * * * in my experience in this county these are tough juries that we get that tend to be conservative, and my concern is that those that show up may be more conservative than what we normally see, and they think the

17

pandemic is a hoax, and those that don't show up might be more favorable to my client. But the bigger problem, I think, is, we're taking out of the fair section [sic] of the prospective jurors out there based on that issue and their willingness to serve.

We find no deficiency in trial counsel's diligence in seeking a continuance of trial until the severity of the pandemic abated.

{¶58} The second argument is that trial counsel was ineffective for not objecting to evidence that Wymer was willing to take a polygraph test. This evidence was introduced through the videorecorded interview with Detective Weston and a written statement made at the same time. Both the video recording and the written statement attest Wymer's willingness to take a polygraph examination. There is no evidence that a polygraph examination was ever administered, Weston testified that a polygraph examination never occurred, and the issue did not arise again during the course of the proceedings.

{¶59} "As to the polygraph test, it is true that Ohio law[] 'precludes the admission of the willingness or unwillingness of a party to take a polygraph examination.'" *State v. Murphy*, 8th Dist. Cuyahoga No. 107836, 2019-Ohio-4347, ¶ 76, quoting *State v. Graves*, 1st Dist. Hamilton No. C-950022, 1999 WL 540115, *3 (Sept. 13, 1995); *see State v. Turner*, 12th Dist. Brown No. CA2019-05-005, 2020-Ohio-1548, ¶ 13, quoting *State v. Banner*, 8th Dist. Cuyahoga No. 94078, 2010-Ohio-5592, ¶ 22 ("'a defendant's professed willingness to submit to a polygraph test is inadmissible and testimony concerning it can constitute prejudicial error'").

{¶60} "'However, the mere mention of the phrase "polygraph examination" by a witness testifying on behalf of the state does not necessarily result in prejudice to the

18

accused.'" *State v. Gilliam*, 4th Dist. Pickaway Nos. 15CA19 and 15CA20, 2016-Ohio-2950, ¶ 34, quoting *Graves* at *3. For example, in *Murphy*, evidence of the defendant's willingness to take a polygraph test was presented to the jury without objection from defense counsel. Under circumstances similar to those in the present case, the court of appeals found no prejudice: "There is no evidence that the polygraph test was administered or any indication of test results. After a thorough review of the record, we cannot say that the admission of the polygraph testimony rose to the level of plain error so that the outcome of the case would have been different without it." *Id.* at 77.

{¶61} It is worth noting that defendants have challenged on appeal, although unsuccessfully, trial court decisions to redact portions of an interview or interrogation in which the defendant expressed a willingness to take a polygraph examination as prejudicial to the defense. *State v. Byrd*, 9th Dist. Lorain No. 03CA008230, 2003-Ohio-7168, ¶ 33 ("[a]ssuming without deciding that this instance would favor inclusion, this Court concludes that the decision of the trial court to exclude Appellant's statements regarding his willingness to take a polygraph examination as a means of proving his innocence does not rise to the level of an abuse of discretion"); *State v. Blasdell*, 155 Ohio App.3d 423, 2003-Ohio-6392, 801 N.E.2d 853, ¶ 31 (7th Dist.) ("the trial court did not abuse its discretion in refusing to admit evidence of appellant's willingness to take a polygraph test"); *State v. Kennedy*, 3d Dist. Logan No. 8-18-01, 2018-Ohio-4172, ¶ 54 (defendant argued "that the trial court erred by redacting a portion of her interview at the jail wherein she stated she would potentially be willing to take a polygraph examination"); *compare State v. Fender*, 5th Dist. Tuscarawas No. 2013 AP 12 0072, 2014-Ohio-19, ¶ 15, ¶ 17 (trial counsel was not ineffective for allowing the defendant's wife to testify that

19

he "was willing to take a polygraph test, but did not take one on the advice of counsel"; "[b]y using that which cannot be used and proclaiming one's innocence with a plea for a polygraph test, the defense attempted to bolster [defendant's] credibility and innocence").

{¶62} In the present case, we cannot discern any prejudice resulting from trial counsel's failure to object to evidence of Wymer's willingness to take a polygraph examination. It was explained to the jury that no test was ever administered, and the issue was not mentioned again. Any inferences from the mention of his willingness to take a polygraph were more likely to be beneficial or at least neutral to his defense than prejudicial.

{¶63} The fifth assignment of error is without merit.

{¶64} For the foregoing reasons, Wymer's convictions on all but the ninth and tenth counts are affirmed. The convictions for gross sexual imposition contained in the ninth and tenth counts are reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

JOHN J. EKLUND, P. J., concurs,

MATT LYNCH, J., concurs in part and dissents in part, with a Dissenting Opinion.

_____

MATT LYNCH, J., concurs in part and dissents in part, with a Dissenting Opinion.

{¶65} I concur with the majority Opinion in all respects except for the disposition of the first assignment of error.

**{¶66}** The issue under this assignment is whether Wymer was entitled to a continuance on Counts 9 and 10 when a Superseding Indictment issued just before trial changed those counts from Gross Sexual Imposition based on the victim's age to Gross Sexual Imposition based on the use or threat of force. As the majority acknowledges, "[t]here are no mechanical tests for deciding when the denial of a continuance is so arbitrary as to violate due process." *State v. Unger*, 67 Ohio St.2d 65, 67 423 N.E.2d 1078 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). Rather, "[t]he answer must be found in the circumstances present in every case." *Id.*

**{¶67}** In the present case, Wymer claimed the new charges in the Superseding Indictment returned on the eve of trial did not provide "adequate notice" of the conduct for which he was being charged or time to "retool [the] defense." On the contrary, Wymer received adequate notice of the factual basis for the Gross Sexual Imposition charges in Counts 9 and 10 and had ample opportunity to retool his defense. Over a month before trial, the State moved the trial court to amend the original Indictment "to correct a clerical error with regard to Counts Nine and Ten of the indictment," i.e., the Indictment alleged that the victim was less than thirteen years of age rather than that Wymer compelled the victim to submit by force. The Bill of Particulars, filed at the same time, asserted that Wymer "purposely compelled the [victim] to submit by force or threat of force," and that the "child victim was thirteen years old at the time of the incident." Moreover, Wymer successfully argued to the trial court that the purported "clerical error" could not be cured by amendment and, thus, forced the State to seek the Superseding Indictment.

21

Case No. 2021-T-0014

{¶68} A bill of particulars is not adequate to cure a defective indictment. However, a bill of particulars is adequate to put a defendant on notice of the conduct for which he is being charged. *Compare State v. Troisi*, __ Ohio St.3d __, 2022-Ohio-3582, __ N.E.3d __, ¶ 33 ("the omission of an underlying offense in an indictment can be remedied by identifying the offense in the bill of particulars"). Here, since Wymer was on actual notice that he would be charged with Gross Sexual Imposition based on the use or threat of force, he cannot claim that he was prejudiced by the lack of notice or deprived of the opportunity of preparing a defense accordingly. The issue is not when he was actually charged with violating R.C. 2907.05(A)(1) instead of section (4), but whether he was prejudiced by the denial of a continuance. With respect to Counts 9 and 10, Wymer knew for over a month prior to trial that the victim was over the age of thirteen and that he was alleged to have compelled her submission by the use or threat of force. The request for a continuance on the day of trial was not necessary and its denial was not an abuse of discretion.

{¶69} For the foregoing reasons, I respectfully dissent and would affirm Wymer's convictions for Gross Sexual Imposition as charged in Counts 9 and 10. In all other respects, I concur in the majority Opinion.