JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Willie Hatcher appeals from his conviction for aggravated robbery following a jury trial. He argues that he was deprived of a fair trial when the prosecutor (1) made false testimonial assertions during cross-examination of a defense witness; (2) used appellant's pre-arrest silence as evidence of guilt; (3) made improper closing arguments; and (4) elicited improper expert testimony from a police officer regarding the "consistency" of the victim's statements. We find no plain error affecting appellant's substantial rights. Accordingly, we affirm.
 Facts and Procedural History {¶ 2} Appellant was charged with aggravated robbery with firearms specifications in a one count indictment filed March 8, 2007. His jury trial began on May 16, 2007. At trial, the state presented the testimony of the victim, Keion Walker, and his mother, Carmetta Robinson, as well as Othella Hayden, a Cleveland Police officer assigned to John F. Kennedy High School, Cleveland Police detective Donald Roberson, and Cleveland Police officer Gregory Jones.
 {¶ 3} After the court overruled appellant's motion for a directed verdict, the defense presented the testimony of appellant's friend, Jamir Wilkes, investigator Brian Draper, and appellant himself. Appellant's renewed motion for a directed verdict was also denied, after which the jury heard closing arguments and instructions. The jury found appellant guilty of aggravated robbery but not guilty of *Page 4 
the firearms specifications. The court subsequently sentenced him to five years' imprisonment, followed by five years' post-release control.
 {¶ 4} Appellant does not challenge the weight or sufficiency of the evidence against him. In brief, the victim testified that appellant and his cousin, Cortez Hatcher, surrounded him on a staircase at John F. Kennedy High School. The victim had brought $200 to school that day so that he could buy shoes after school; he believed that Jamir Wilkes had seen him with the money, and surmised that Wilkes had "set him up." Cortez Hatcher brandished a gun; appellant told the victim to "just do what he says." The victim "took off running," out the school doors and into a nearby McDonald's restaurant. Appellant followed him on foot. As he was running, the victim looked back and "didn't see [appellant] no more." However, he then saw appellant and Cortez Hatcher following him in a vehicle driven by Jamir Wilkes. The assailants tried to hit the victim with the car, and the victim fell down. Appellant got out of the car and grabbed the victim's shirt as the victim was entering the restaurant. Appellant smiled at the victim and returned to the car. The victim then spoke with his mother by telephone and ran home.
 {¶ 5} Shortly thereafter, police transported the victim back to school. He saw Jamir Wilkes in handcuffs and Jamir "was smiling and laughing at me." Appellant and Cortez Hatcher came back to the school, and the victim identified them as the persons who held him up. The victim said he was friends with Jamir Wilkes, but was not friends with appellant or Cortez Hatcher. *Page 5 
 {¶ 6} Testimony and arguments relevant to the specific assignments of error will be discussed below.
 Law and Analysis {¶ 7} In his first assignment of error, appellant argues that the prosecutor made "false testimonial assertions" "under the pretext of cross-examination." In cross-examining Jamir Wilkes, the prosecutor inquired about some 322 telephone calls the prosecutor alleged appellant had made to another friend, Martez, from county jail. During the course of the cross-examination, the prosecutor insinuated that the telephone calls were made for the purpose of fabricating and rehearsing testimony. The witness denied any knowledge about any such conversations. Appellant's counsel did not object to the prosecutor's repeated questions on this subject.
 {¶ 8} Later, appellant's counsel requested a curative instruction or a mistrial because the telephone calls were not and could not have been made by appellant because he was not even in county jail at the time these calls were made. Counsel and the court agreed that the court would give a curative instruction to the jury with respect to the implication that appellant made these telephone calls, but would not draw further attention to the claim that appellant was in county jail. The court then instructed the jury that "[i]t has come to the court's attention that [appellant] is not the individual who physically initiated the phone calls that were previously testified to." "You are reminded that comments by the attorneys are not evidence. You are *Page 6 
further instructed to disregard any information received from the attorneys given to you in the form of their questions. All evidence comes from the witness on the stand."
 {¶ 9} "The misconduct of a prosecuting attorney during trial is not reversible error unless it deprives the defendant of a fair trial."State v. DePew (1988), 38 Ohio St.3d 275, 284. Appellant's counsel requested either a curative instruction or a mistrial, and the court granted his motion for a curative instruction. The curative instruction not only informed the jury that appellant did not make the telephone calls, but reminded them that testimony comes from the witnesses, not from the attorneys. The witness categorically denied any knowledge of the alleged telephone call. "Generally, a reviewing court must presume that the jury followed the trial court's curative instruction." Id. Therefore, we cannot say appellant was deprived of a fair trial on this basis.[1]
 {¶ 10} Second, appellant claims that the prosecution deprived him of a fair trial by using his pre-arrest silence as evidence of his guilt. Detective Donald Roberson testified, without objection, that he contacted appellant's mother by telephone then spoke to appellant. The detective believed appellant told him he did not do it and agreed to come in for an interview and to make a statement, but appellant did not *Page 7 
show up for the interview.
 {¶ 11} In State v. Leach, 102 Ohio St.3d 135, 2004-Ohio-2147, the Ohio Supreme Court concluded that the state's use of a defendant's pre-arrest, pre-Miranda warning silence as substantive evidence of guilt in its case-in-chief violated the defendant's privilege against self-incrimination, where the jury was informed that the defendant told the police that he wanted to speak with an attorney before he talked to them.
 {¶ 12} This case is distinguished from Leach by the fact that appellant here did not decline to speak with the police or invoke his right to counsel. Detective Roberson said appellant denied his guilt and made an appointment to come in for an interview, but never came, while appellant denied that he ever talked to Detective Roberson, and denied that he made an appointment to meet with Roberson. Regardless, however, appellant did provide a written statement to the school. On cross-examination, his testimony was extensively compared to this statement. Thus, appellant was not silent before his arrest.
 {¶ 13} In closing arguments, the state suggested that the jury should conclude that Detective Roberson was telling the truth and that appellant was lying when he denied making an appointment. This argument simply addresses the witnesses' credibility; it does not imply that his failure to appear was substantive evidence of guilt.
 {¶ 14} The remainder of the prosecutor's closing argument on this issue *Page 8 
concerned the inconsistencies between the statements appellant and Wilkes made to the school and their testimony. This argument obviously did not address appellant's failure to give a statement to the police at all, much less insinuate guilt from his silence. Therefore, we find that the record does not support appellant's argument that the state used appellant's silence as evidence of his guilt.
 {¶ 15} Third, appellant argues that the prosecutor deprived him of a fair trial by referring to the crime rate in the area surrounding the school during closing arguments, and arguing that it was the jury's responsibility to hold criminals accountable for their actions. Once again, appellant did not object to this argument. More important, taken as a whole, we do not find that the argument was improper. The prosecutor argued that the jury should "let the quality of the evidence carry the day. Convict this individual of the crime that he committed and serve some justice in the Lee/Harvard area." Taken as a whole, the prosecutor's argument only asked the jury to consider the evidence and find the defendant guilty.[2] There is nothing improper in this.
 {¶ 16} Finally, appellant complains that Detective Roberson was allowed to testify that the victim's statements to the police were consistent. He contends that this usurped the jury's role in determining whether the victim was credible. We *Page 9 
disagree. The credibility determination was left for the jury. All Detective Roberson said was that the statements were consistent, not that he believed they were true. Consistency and truthfulness are not interchangeable concepts.
 {¶ 17} Accordingly, we affirm.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] Nonetheless, we must censure the prosecutor for his overzealous pursuit of this line of questioning. The telephone calls were not made to this witness. Any knowledge he may have had about them was necessarily inadmissible hearsay. Furthermore, the witness denied any knowledge about the telephone calls. The prosecutor's repeated inquiries border on bullying the witness.
[2] The prosecutor came dangerously close to denying appellant a fair trial when he argued, "don't let these people hide behind a standard of reasonable doubt when there is no doubt." Reasonable doubt is not a defense; proof beyond a reasonable doubt is the state's burden of proof. *Page 1