[Cite as *State v. Gaetan*, 2025-Ohio-808.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-T-0022 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| JOSE A. GAETAN, | |
| Defendant-Appellant. | Trial Court No. 2023 CR 00192 |

## O P I N I O N

Decided: March 10, 2025
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders* and *Charles L. Morrow,* Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Joseph C. Patituce* and *Erin M. Branham*, Patituce & Associates, LLC, 16855 Foltz Industrial Parkway, Strongsville, OH 44149 (For Defendant-Appellant).

ROBERT J. PATTON, P.J.

{¶1} Defendant-appellant, Jose A. Gaetan ("appellant"), appeals from the judgment of the Trumbull County Court of Common Pleas sentencing appellant to an aggregate sentence of a minimum prison term of 25 years to a maximum prison term of life for his convictions on five counts of gross sexual imposition and two counts of rape. For the following reasons, we affirm.

{¶2} Appellant alleges prosecutorial misconduct during the course of the trial, including during opening statements, cross-examination of the appellant, and during closing arguments. Upon review of the record, we find no plain error. The assistant

prosecutor did not impermissibly comment on appellant's guilt and did not improperly vouch for a witness's credibility. The assistant prosecutor's remarks during opening statement and closing argument were within the bounds of what we consider to be acceptable. However, they were unnecessarily "close to the line" of improper argument and should have remained focused on the anticipated and presented evidence for opening statements and closing arguments, respectively. Based on the record before us, we conclude that the remarks did not result in prosecutorial misconduct. The remarks by the assistant prosecutor during opening statements and closing arguments did not compromise appellant's right to a fair trial.

{¶3} Appellant also challenges the trial court's decision permitting the admission of expert testimony, other acts evidence, and the out of court statements of the child victim, ("A.A."). The trial court did not err when it permitted the State's expert witness, a sexual assault nurse, to testify regarding delayed disclosure, incremental disclosure, and grooming in sexual assault cases.

{¶4} We also conclude that the trial court did not abuse its discretion when it permitted the other acts evidence which was elicited by defense counsel on cross-examination or when it permitted the State to inquire about the defendant's prior sexual history to rebut his testimony that he no longer had the desire to engage in sexual relations.

{¶5} Further, the out-of-court statements made by A.A. were permissible as A.A. testified at trial and was subject to cross-examination regarding her statements. The trial court did not err in allowing the recordings and transcripts of the interview at the Child Advocacy Center ("CAC") to be admitted into evidence.

2

{¶6} Because we conclude that no reversible error occurred during appellant's trial, we necessarily determine that appellant's trial counsel was not ineffective as his performance did not prejudice appellant. Trial counsel is presumed competent, and appellant failed to establish that his counsel's performance was deficient.

{¶7} Appellant also argues that the State failed to present sufficient evidence to support his convictions. Upon review of the record, we find that the State presented evidence as to each element of every offense and the evidence was sufficient to support appellant's convictions.

{¶8} Therefore, the judgment of the Trumbull County Court of Common Pleas is hereby affirmed.

**Substantive and Procedural History**

{¶9} On May 17, 2023, the Trumbull County Grand Jury returned an eight-count indictment charging appellant with six counts of gross sexual imposition, third-degree felonies, in violation of R.C. 2907.05(A)(4)&(C)(2) (Counts 1, 2, 3, 6, & 7); two counts of rape, first-degree felonies, in violation of R.C. 2907.02(A)(1)(b)&(B) and R.C. 2971.03(B)(1)(b)&(c) (Counts 4 & 5); and one count of disseminating matter harmful to juveniles, a fifth-degree felony, in violation of R.C. 2907.31(A)(1)&(F).[1]

{¶10} On May 23, 2023, appellant pled not guilty to the charges at arraignment.

{¶11} A jury trial was held on January 29, 2024. The following facts were presented at trial:

{¶12} A.A.'s Mother, M.M. ("Mother"), and Father, M.A.A.C. ("Father") arranged for appellant to come live in Ohio after Hurricane Maria hit Puerto Rico. Appellant is

---

1. The underlying case was bound over from Warren Municipal Court on March 31, 2023.

Case No. 2024-T-0022

Father's biological father and A.A.'s grandfather. Mother testified that appellant helped the family financially at times, including helping them afford their home and assisting them in starting their boxing business. According to Mother, her children and appellant were very close and spent a lot of time together.

{¶13} A.A. was born on March 12, 2013, and was ten years old at the time of trial. A.A. referred to appellant as "the uncomfortable man." Appellant lived about two blocks away from A.A. and her family, in the City of Warren, Trumbull County, Ohio. A.A. and her older brother, A.A.M.J. ("Brother") testified at trial. Brother testified that when they were growing up, the children spent almost every day at appellant's house and would sleep over most weekends. According to A.A., she and her sister, M.A. ("Sister") would spend the night. Occasionally Brother would also spend the night. Appellant would be the only adult in the residence during the sleepovers.

{¶14} A.A. testified that she would sleep next to appellant on the bed and that M.A. would sleep next to her. According to Brother, A.A. was appellant's favorite and would sleep with appellant in appellant's bed. A.A. said that she would get more attention and more things than her siblings. A.A. stated that appellant would give her money if she cleaned his room. A.A. testified that appellant never asked her siblings to clean his room.

{¶15} A.A. recalled showering with the appellant five times when she was five or six years old. She testified that appellant told her that when he gets older, A.A. was going to have to help him clean his butt.

{¶16} When she was eight and nine years old, A.A. testified that appellant would kiss her everywhere and lick her on her private parts. According to A.A., appellant would start kissing her at her head and kiss her down to her feet. Appellant would lift her clothes

4

to kiss underneath them. Appellant would kiss her on her chest, her stomach and her back. A.A. testified appellant would slide her underwear off and kiss her on her private part, on her legs, and on her butt. A.A. testified this happened more than once, but could not recall if it happened more than ten times. A.A. testified appellant referred to her private part as "tesoro," the Spanish word for treasure.

{¶17} A.A. also testified that appellant licked inside her vagina and her anus. She testified she was doing handstands on appellant's legs, when her legs went over appellant's shoulders. According to A.A., appellant pulled down her underwear and licked her more than once. Appellant told A.A. not to tell anyone.

{¶18} A.A. stated that when she and appellant would get in bed, appellant would unzip his pants, pull out his penis, and tell her to hold and squeeze his penis. A.A. testified this happened at least five times.

{¶19} A.A. testified when she was nine years old, she walked into appellant's room and saw a picture on appellant's phone of two adults, a male and female, engaging in anal sex. According to A.A., appellant told her it was fine and showed her the picture.

{¶20} A.A. disclosed the abuse initially to Brother. Brother testified that A.A. told him the appellant would do stuff with her private parts. Brother wanted to tell their parents, but A.A. asked him not to tell anyone. Brother testified that he did not tell anyone.

{¶21} Mother testified that she noticed a sudden shift in A.A.'s behavior when A.A. suddenly no longer wanted to go anywhere with appellant. Mother testified that on February 18, 2023, she woke the children to go to the boxing class that Mother and Father taught on Saturday mornings. Mother testified that A.A. told her that she did not want to go to the boxing class. Mother then told her to get ready to go to appellant's instead. A.A.

5

told Mother she did not want to go to appellant's either. Mother testified she was in the shower and called A.A. to the restroom to tell her to get dressed. A.A. told Mother "no." Mother testified that A.A. never talked like that.

{¶22} Mother then asked A.A. if she was uncomfortable at appellant's house. A.A. told her that she did not want to go to appellant's because he likes her as a girlfriend. A.A. then disclosed the abuse to Mother. A.A. testified she was scared to tell Mother and started to cry. A.A. then disclosed the abuse to Father. Mother and Father decided to wait to call police.

{¶23} On the evening of February 18, 2023, appellant stopped to visit at Mother and Father's residence. Mother testified that they did not confront appellant during his visit, but believed appellant sensed tension and left after 15 minutes.

{¶24} The day after A.A. disclosed the abuse, on February 19, 2023, Mother and Father confronted appellant about the allegations at his home. Mother testified that appellant was cooking when Father told appellant that the meal would be his last with them because of what appellant did to A.A. According to Mother, appellant wanted them to let him go back to Puerto Rico. Instead, Mother called the police and returned to the family residence. Father testified he stayed behind with appellant. Father testified that he was aware appellant kept a firearm and that he retrieved the firearm to prevent appellant from trying to use it. Father testified he placed the firearm in a cereal box.

{¶25} Warren City Police Detective, Nicholas Carney ("Det. Carney"), testified he was assigned to investigate the allegations on February 21, 2023. Det. Carney testified when there are allegations of sexual assault, the Warren City police will run a parallel investigation with Children Services. Det. Carney stated that during the investigation, it is

6

the police department's preference to conduct any interviews with the child victims of sexual assault at the CAC located at Akron Children's Hospital in Boardman.

{¶26} Det. Carney testified that he and a Liberty Township Police Officer, Officer Kitchen, interviewed appellant on February 22, 2023.[2] A recording of the interview was submitted as State's Exhibit 7 and played for the jury. Det. Carney testified that he read the Waiver of Rights form to appellant and that appellant initialed each line and signed the waiver. During the interview, appellant denied ever touching A.A. inappropriately and denied putting his mouth on A.A.'s private parts. Appellant also denied having A.A. touch his penis. Appellant indicated that A.A. saw him showering when she was younger and that he explained to A.A. the anatomical differences between boys and girls. Appellant told Det. Carney that A.A. liked to make up stories and that A.A. was lying. Det. Carney testified he initially filed charges in the Warren Municipal Court for one count of gross sexual imposition.

{¶27} Trumbull County Children Services Investigator, Melanie DeLuca ("DeLuca"), was assigned to investigate the case on March 7, 2023, after Det. Carney alerted Children Services about the allegations. DeLuca contacted Mother and Father, conducted a home visit, and scheduled A.A.'s forensic interview at the CAC.

{¶28} On March 14, 2023, DeLuca interviewed A.A. The interview was recorded. The recording was presented as State's Exhibit 1 and played for the jury.[3] A.A. told DeLuca that she used to visit appellant a lot until she became uncomfortable with appellant's actions. A.A. told DeLuca that appellant kissed her everywhere, licked her

---

2. Officer Kitchen is a Spanish-speaking officer and was present during the interview in the event any translation was needed.
3. State's Exhibit 2 is the transcript of the March 14, 2023 forensic interview or State's Exhibit 1.

7

Case No. 2024-T-0022

vagina and anus, and that appellant made her touch and squeeze his penis. A.A. explained that appellant called her vagina the "tesoro" or treasure. A.A. also told DeLuca she could not remember if something went inside her anus or her vagina.

{¶29} An impromptu second interview of A.A. was conducted on March 30, 2023, in DeLuca's office. DeLuca testified that the family was there for her to talk with Mother and Father and A.A.'s siblings, however, A.A. wanted to talk to DeLuca. The audio recording of the second interview was presented as State's Exhibit 4 and played for the jury.[4] During the second interview, A.A. clarified that appellant's tongue went inside her vagina and her butt.

{¶30} After DeLuca conducted the interview, A.A. was seen by Nurse Practitioner Amanda McAllen ("Nurse McAllen") at the CAC. Nurse McAllen took a detailed medical history and examined A.A. According to Nurse McAllen, there were no signs of physical injuries on A.A. related to sexual abuse.

{¶31} Father testified that shortly after A.A.'s disclosure of the abuse, he removed his children's belongings from appellant's house and also removed appellant's Rolex watch. Father testified that he took the watch so appellant could not sell it to get out of jail. Father also testified that he withdrew $1,200 from a bank account he shared with appellant.

{¶32} Appellant also testified. At the time of trial, appellant was 78 years old. Appellant testified that he has been married three times and has ten children with five different women. Appellant also testified that he has a prostrate issue and has no desire for sex. He testified that he had not had sex in the last 17 years.

---

4. State's Exhibit 5 is the transcript of the March 30, 2023 interview or State's Exhibit 4.

8

**{¶33}** According to appellant, when living in Puerto Rico, he worked as a police officer for ten years. Appellant then worked at the Miami Dade Police Department before working for the Chandler Shoe Store. Appellant testified that he came to Ohio after Hurricane Maria. Appellant lived with Mother, Father, and the three children for approximately two years. During this time, appellant recalled the incident where A.A. observed him naked in the shower. Appellant testified that he explained that men and women are different. According to appellant, he told Father about the incident. Appellant also testified that A.A. got into the shower with him, once, when she was three and a half years old. Appellant denied that he licked A.A.'s private parts and denied having A.A. touch his penis.

**{¶34}** Appellant testified that in January 2023, prior to A.A.'s disclosure, Father asked appellant for $5,000. Appellant testified that on February 19, 2023, Father and Mother came to his house. Father was screaming at him, and appellant repeatedly denied having any inappropriate contact with A.A. Appellant admitted that he referred to A.A.'s private area as her treasure. Appellant explained that he told A.A. when she gets older and gets married, someone would marry her for her treasure. Appellant also testified that Father had a drug problem in the past starting when Father was 15 or 16 years old in Puerto Rico.

**{¶35}** On January 31, 2024, the jury found appellant guilty of each count of gross sexual imposition (Counts 1, 2, 3, 6 & 7) and both counts of rape (Counts 4 & 5) as charged in the indictment. As to the two rape charges, the jury also made the following factual findings: that the victim was less than ten years old and that appellant purposely

9

compelled the victim to submit by force or threat of force. The jury found appellant not guilty of disseminating harmful material to juveniles.

{¶36} On February 8, 2024, the trial court sentenced appellant to a prison term of 36 months on each of the gross sexual imposition convictions (Counts 1, 2, 3, 6, & 7). The trial court sentenced appellant to a minimum of 25 years to a maximum of life on both of the rape convictions (Counts 4 & 5). The sentences imposed were ordered to be served concurrently to each other for an aggregate sentence of a minimum of 25 years to a maximum of life plus fines and costs. Appellant was also informed of his duty to register as a Tier III sex offender or child victim offender.

{¶37} Appellant now appeals his convictions and raises seven assignments of error for review:

> [1.] "The state engaged in prosecutorial misconduct throughout the course of the trial that deprived Appellant of his right to a fair trial (T.p. 17, 24, 257-258, 279-280, 284, 286, 317)."
>
> [2.] "The trial court erred in permitting the state to introduce evidence pursuant to Evid.R. 404(b) that was not relevant and whose prejudicial value substantially outweighed any probative value (T.p. 42-43, 62, 134)."
>
> [3.] "The trial court erred when it allowed the alleged child victim, who was under 10 years old at the time she made her statements, to testify without first complying with Evid.R. 807 (T.p. 31-32)."
>
> [4.] "The trial court erred in permitting expert testimony in violation of the Ohio Rules of Evidence, the Ohio Rules of Criminal Procedure, and Appellant's constitutionally protected rights under the United States and Ohio Constitutions (T.p. 183, 198-200, State's Answer to Request for Discovery Dkt. 11, p. 1-2)."

10

[5.] "Appellant was denied effective assistance of counsel where trial counsel failed to move for the exclusion of irrelevant and prejudicial evidence (Passim)."

[6.] "The state failed to present sufficient evidence to prove Appellant's guilt as to counts four and five beyond a reasonable doubt (T.p. 32-65)."

[7.] "The cumulative effect of the multitude of errors in this case deprived Appellant of his constitutionally guaranteed right to a fair trial (Passim)."

## Prosecutorial Misconduct

{¶38} Appellant asserts in his first assignment of error, that the State committed misconduct "when it made improper statements vouching for the credibility of witnesses, garnering sympathy for witnesses, and injecting personal opinions into closing remarks." Specifically, appellant argues that the State inappropriately commented on appellant's guilt in opening statements.

{¶39} "To address allegations of prosecutorial misconduct we 'must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial rights.' " *State v. Light*, 2023-Ohio-1187, ¶ 46 (11th Dist.), quoting *State v. LaMar*, 2002-Ohio-2128, ¶ 121. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *Id.*, quoting *State v. Garrett*, 2022-Ohio-4218, ¶ 144. "Thus, 'prosecutorial misconduct alone does not require a new trial' and '[t]he conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial.' " *Id.,* quoting *State v. Hamad*, 2019-Ohio-2664, ¶ 123 (11th Dist.). *See also State v. Apanovitch*, 33 Ohio St.3d 19, 24 (1987). Because appellant's counsel failed to object during opening statements, he has waived all but plain error. *State v. Twyford*, 2002-Ohio-894, ¶ 68,

11

citing *State v. Wade* 53 Ohio St.2d 182, (1978), paragraph one of the syllabus. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B).

**{¶40}** Appellant first asserts that the assistant prosecutor made improper remarks during opening statements.

**{¶41}** During a jury trial, the function of an opening statement "is to inform the jury in a concise and orderly way of the nature of the case and the questions involved, and to outline the facts intended to be proved." *State v. Hoerig*, 2020-Ohio-1333, ¶ 52 (11th Dist.), quoting *Maggio v. Cleveland*, 151 Ohio St. 136, (1949), paragraph one of the syllabus. While counsel is given latitude in opening statements, "a prosecutor is not allowed 'to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused' or 'allude to matters which will not be supported by admissible evidence,' and 'must avoid insinuations and assertions which are calculated to mislead the jury.' *Hoerig* at ¶ 52, quoting *State v. Smith*, 14 Ohio St.3d 13, 14 (1984).

**{¶42}** Prior to the start of trial, the trial court explained the purpose of opening statements and instructed the jury that opening statements are not evidence. This instruction was repeated prior to the State's opening statement. It was also repeated in the trial court's final jury instructions prior to deliberation.

**{¶43}** Appellant alleges that the assistant prosecutor inappropriately commented on appellant's guilt during opening statements. Specifically, appellant takes issue with the following statements by the assistant prosecutor:

> This is case is about accountability. That's why we are here. That's why we called each and every one of you away from your lives and your homes and your families and your jobs, to hold this man, Jose Gaetan, accountable, accountable for his

12

Case No. 2024-T-0022

actions from various dates, approximately 2021 to 2023 when he groomed, sexually touched, molested, and ultimately raped his own biological granddaughter, [A.A.], from the time she was approximately eight years old to the time she was approximately nine years old. That's why we're here. We're here because his actions have consequences. If he refuses to accept accountability, then it must be imposed upon him. That's why we're here.

Dkt. 43, T.p. Trial Vol. II, p. 17.

{¶44} The assistant prosecutor then concluded his opening statement with the following remarks:

At the conclusion of this case -- again, this is about accountability. That's why we're here, to hold this man accountable for what he's done. His actions have consequences. This trial is his reckoning, whether you are 18 years old or 79 year old, no one is above the law. Everyone answers equally, and that's why we're here.

I'm confident that at the conclusion of this case, when you hear all the evidence, when you hear from this child, you hear from her family, you see everything that she's been through, that you will help me hold this man accountable, find him guilty of each and every count, each and every factual finding.

Dkt. 43, T.p. Trial Vol. II, p. 34.

{¶45} While defense counsel did not object during the State's opening statement, defense counsel reminded the jury that the State's opening statement is not evidence. Defense counsel noted: "nothing that was just said by the state is evidence, including his opinions, his opinions especially of my client. That is not evidence. We'll let the -- we'll let the evidence make the determination here."

{¶46} The State did not directly comment on appellant's guilt during the opening statement or otherwise engage in prosecutorial misconduct. The assistant prosecutor expressed that the facts presented during the trial would be sufficient to establish

13

Case No. 2024-T-0022

appellant's guilt and confidently stated that the evidence would lead the jury to ultimately hold appellant accountable for his actions. *See State v. Hatcher*, 2008-Ohio-3139, ¶ 15 (8th Dist.). While the prosecutor's comments appear to be within the bounds of an appropriate opening statement, the comments are in proximity of crossing the threshold of improper argument. Counsel should be wary of testing the limits. Argument is best focused on the evidence.

{¶47} Further, even if the comments are considered outside the limits of an appropriate opening statement, the jury was repeatedly advised that opening statements were not evidence. As such, the remarks by the assistant prosecutor during opening statements do not amount to plain error. Appellant was not prejudiced, and the comments did not otherwise compromise appellant's right to a fair trial.

{¶48} Appellant next argues that the State improperly discussed the appellant's sexual history during cross-examination over defense counsel's objection. Specifically, appellant asserts that the State's questioning regarding his relationship with a church parishioner which resulted in a pregnancy was improper.

{¶49} Appellant cites to R.C. 2907.02(D), Ohio's rape-shield law, which provides in relevant part:

> Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or sexually transmitted disease or infection, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

14

**{¶50}** "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." R.C. 2945.59.

**{¶51}** A similar prohibition appears in Evid.R. 404(B) which provides that evidence of other acts is not admissible to prove the character of a person to show that the person acted in conformity with his character on a particular occasion.

**{¶52}** During direct examination of appellant, defense counsel inquired about appellant's prior marriages. Defense counsel also asked appellant how many children he has. Appellant responded, "ten."

**{¶53}** On cross-examination, the following exchange took place between the appellant and the assistant prosecutor:

> Q: Do you think you have a problem with self control when it comes to sex?
>
> A: I -- I don't have sex for long, long, long time. Since I came in sick from my prostate, I lost all desire, all wanting a woman. I been without a woman for the last 17 years.
>
> Q: Last 17 years?
>
> A: Yes.
>
> Q: Gets lonely, doesn't it?
>
> A: But I have no desire for that.
>
> Q: You have ten kids?

15

Case No. 2024-T-0022

A: Ten kids.

Q: To five different women?

A: Yes, sir.

Q: You were a pastor; correct?

A: Yes.

Q: Not anymore, though?

A: Not anymore.

Q: You impregnated one of the women at your church, right?

{¶54} Defense counsel objected to this line of questioning. The trial court overruled the objection. Appellant ultimately answered in the affirmative.

{¶55} The State asserts that the question was not improper, but instead goes to the appellant's credibility and his statement that he has had no desire to be with a woman for 17 years. Evid.R.608(B) provides that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

{¶56} The State asserts that the assistant prosecutor inquired into the prior sexual history of appellant to attack his credibility and character for truthfulness, which is permissible on cross examination. However, upon review of the record, it does not appear

16

Case No. 2024-T-0022

that the State ever established that appellant's sexual relationship with a parishioner occurred during the 17 years that appellant claims he no longer had a desire for sex. Without this connection, the question appears to be an improper inquiry. Even if improper, the question alone does not rise to the level of prosecutorial misconduct and did not deprive appellant of a fair trial.

{¶57} In his final argument in his first assignment of error, appellant further asserts that the State made several improper statements to the jury during closing arguments which were aimed to garner sympathy and emotion toward the minor victim. As appellant did not object to the prosecutor's remarks during closing argument, he has waived all but plain error.

{¶58} "[A] prosecutor has wide latitude in closing arguments. As long as an improper comment is isolated and does not deprive the defendant of a fair trial, it will not constitute reversible error. *State v. Davis*, 76 Ohio St.3d 107 (1996). 'The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused.' " *State v. Bleasdale*, 1996 WL 535283 (11th Dist. September 6, 1996), quoting *State v. Lott*, 51 Ohio St.3d 160, 165 (1990). *See State v. Clark*, 2024-Ohio-6001. In *State v. McAlpin*, 2022-Ohio-1567, the Ohio Supreme Court noted: "[a]lthough 'criminal trials cannot be squeezed dry of all feeling,' *State v. Keenan*, 66 Ohio St.3d 402, 409, 613 N.E.2d 203 (1993), 'excessively emotional arguments tending to inflame the jury's sensibilities' are improper, *State v. Tibbetts*, 92 Ohio St.3d 146, 168, 749 N.E.2d 226 (2001). However, '[t]he touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor."' *State v.*

17

*Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 155, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)."

{¶59} Further, "[a] prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. *Berger v. United States* (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314. The prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious but to see that justice shall be done. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury. *United States v. Dorr* (C.A. 5, 1981), 636 F.2d 117." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984).

{¶60} Similar to the advisement the trial court gave the jury regarding opening statements, the trial court stated: "the closing arguments of counsel will not be considered by you as evidence. They're merely reiterating the evidence presented and giving you their spin on that evidence." Dkt. 43, T.p. Trial Vol. II, p. 10. Prior to closing arguments by counsel, the trial court again advised the jury that "statements of counsel and closing arguments are not evidence so those of you taking notes may not take notes during the closing arguments." Dkt. 43, T.p. Trial Vol. II, p. 278. When closing arguments were completed, the trial court once again instructed the jury about evidence, specifically that "[t]he evidence does not include the indictment or the opening statements or closing arguments of counsel. The opening statements and closing arguments of counsel are designed to assist you. They're not evidence." Dkt. 43, T.p. Trial Vol. II, p. 321.

{¶61} Appellant alleges that the assistant prosecutor made improper statements "intended to garner sympathy and emotion related to [A.A.] during closing arguments." Appellant cites to four specific remarks by the assistant prosecutor:

18

Case No. 2024-T-0022

You heard from [A.A.], right. She is a scared 10-year-old girl, obviously nervous, obviously shy, obviously didn't want to be here. She is here for one reason, because of this man's actions, because of what he did. That's what put her on that stand. That's what put her in the stirrups at the Child Advocacy Center, what this man did to her. (T.p. 279, 280)

…

Picture her face while this is happening, while he's robbing her of her childhood. (T.p. 284)

…

This happens because she had a gun to her head: you have to go to The Uncomfortable Man's house. (T.p. 286)

…

Let's take this 10-year-old little girl. What has she gained by being here? What's her prize? To tell a group of strangers how she was violated? Is that her prize? Is that her award for being here? Maybe it was to sit at the Child Advocacy Center, put her legs up in stirrups so the nurse could poke at her vagina or her anus. Is that her prize? (T.p. 317)

{¶62} Appellant argues the State impermissibly vouched for the witness's credibility and attempted to garner sympathy from the jury.

{¶63} The Second District Court of Appeals reviewed a similar issue wherein the defendant argued that the prosecutor improperly vouched for a witness during closing arguments in *State v. Jeffery*, 2013-Ohio-504 (2d Dist.). The Second District Court of Appeals stated:

During closing arguments, prosecutors 'can bolster [their] own witnesses, and conclude by saying, in effect, "The evidence supports the conclusion that these witnesses are telling the truth." ' *State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790 (5th Dist.1992). But a prosecutor 'cannot say, "I believe these witnesses," because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor.' *Id.*,

19

citing *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). 'A prosecutor's statement on witness credibility is not an improper voucher where it neither implies knowledge of facts outside the record nor places the prosecutor's personal credibility at issue.' *State v. Miller*, 4th Dist. Washington No. 06CA11, 2007-Ohio-427, 2007 WL 293024, at ¶ 24, citing *State v. Keene*, 81 Ohio St.3d 646, 666, 693 N.E.2d 246 (1998).

*Jeffery* at ¶ 20.

**{¶64}** None of the prosecutor's statements implies knowledge of facts outside the record nor places the prosecutor's personal credibility at issue. Therefore, the prosecutor did not improperly vouch for the witness's credibility in closing arguments.

**{¶65}** Appellant also takes issue with the prosecutor's statement telling the jury to picture the victim's face when the appellant was sexually assaulting her. Appellant appears to be arguing a "golden rule" violation.

**{¶66}** "Courts in this state have found that a '"Golden Rule" argument exists when counsel appeals to the members of the jury to abandon their position of impartiality by placing themselves in the place of one of the parties.' *Sinea v. Denman Tire Corp.*, 135 Ohio App.3d 44, 63, 732 N.E.2d 1033 (11th Dist.1999); *State v. Tucker,* 12th Dist. Butler No. CA2010-10-263, 2012-Ohio-139, ¶ 44. It has been held that while a 'golden rule' argument is 'improper,' such comment 'during closing argument is not *per se* prejudicial so as to warrant a new trial,' but, instead, the test is one of prejudice. *State v. Southall*, 5th Dist. Stark No. 2008 CA 00105, 2009-Ohio-768, ¶ 115; *Sinea* at 63." *State v. Zachary*, 2021-Ohio 2176, ¶44 (11th Dist.).

**{¶67}** The assistant prosecutor's statement to picture the face of the victim during the assault did not ask the jury to place themselves in the place of one of the parties. While emotionally charged, the remark was isolated, and did not prejudice appellant.

20

Case No. 2024-T-0022

**{¶68}** Upon review, the jury was repeatedly advised that closing arguments, like opening statements, are not evidence. As such, the remarks by the assistant prosecutor during closing arguments do not amount to plain error. Appellant was not prejudiced, and the comments did not otherwise compromise appellant's right to a fair trial.

**{¶69}** As such, appellant's first assignment of error is without merit.

### Admission of Evidence

**{¶70}** In appellant's second, third, and fourth assignments of error, he alleges that the trial court improperly permitted various pieces of evidence or testimony. Specifically, appellant argues that the trial court erred when it allowed the State to introduce evidence pursuant to Evid.R. 404(B) that was not relevant and whose prejudicial value substantially outweighed any probative value thereby violating Evid.R. 403. Appellant also claims the court below erred when it allowed the alleged child victim, who was under 10 years old at the time she made her statements, to testify without first complying with Evid.R. 807. Finally, appellant alleges that the trial court erred when it permitted expert testimony in violation of the Ohio Rules of Evidence, the Ohio Rules of Criminal Procedure, and appellant's constitutionally protected rights under the United States and Ohio Constitutions.

**{¶71}** "In general, the determination to admit or exclude evidence lies within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Volpi*, 2023-Ohio-4488, ¶ 42 (11th Dist.), citing *State v. Miller*, 2015-Ohio-956, ¶ 14 (11th Dist.). Similarly, the trial court's admission of other acts evidence lies within the broad discretion of the trial court. *State v. Morris*, 2012-Ohio-2407, ¶ 14, citing *State v. Diar*, 2008-Ohio-6266, ¶ 66.

21

Case No. 2024-T-0022

**{¶72}** In appellant's second assignment of error, appellant argues that the trial court erred when it allowed testimony about alleged incidents between appellant and unnamed and unknown females in Puerto Rico.

**{¶73}** Appellant relies on *State v. Hartman*, 2020-Ohio-4440, in support of his argument. In *Hartman,* the State introduced the testimony of Hartman's former step-daughter who was victimized by Hartman when she was a child. Defense counsel objected to the testimony as improper character evidence. *Id.* at ¶ 12. The trial court permitted the testimony. The Eight District Court of Appeals reversed. The Supreme Court of Ohio stated: "We agree that other-acts evidence can be admitted for purposes other than identity, so we acknowledge that the proposition is a correct statement of law. But because the other-acts evidence in this case was not relevant to any proper purpose, we affirm the judgment of the court of appeals that the other-acts evidence was improperly admitted at Hartman's trial." *Id.* at ¶ 18.

**{¶74}** During the cross-examination of Father, the following exchange took place:

> [Defense Counsel:] Did you ever think maybe to go over and ask to get his [appellant's] side of things before you told him . . . that this was his last meal he was going to have?
>
> [Father:] I got no doubt what he [appellant] did because his past, he confess to me, he did this stuff to girls in Puerto Rico as well.
>
> [Defense Counsel:] He did this stuff - -
>
> [Father:] I just never thought he would be able to do it to his own granddaughters.
>
> [Defense Counsel:] So he told you, according to you, he did this to other girls in Puerto Rico?

[Father:] Two sisters.

. . .

[Defense Counsel:] Is there any doubt in your mind that - - whether your father did this?

[Father:] Never. I know he did this.

[Defense Counsel:] Based upon what your daughter told you; correct?

[Father:] Not just that. Based on what he confess to me that he done before to other girls. Since his penis doesn't get hard anymore, he told me all about licking these girls and all that stuff. So match the confess [sic] of my daughter.

Dkt. 43, T.p. Trial Vol. II, p. 133-134.

{¶75} While Hartman provides a well-reasoned and detailed explanation of other acts evidence and Evid.R. 404(B), appellant's reliance is misplaced. Unlike in *Hartman*, this testimony and alleged "other acts" evidence was not offered or presented by the State. Instead, it was appellant who elicited the testimony from Father regarding the other acts evidence in Puerto Rico on cross examination. "It is well established that a party cannot complain on appeal that the trial court erred [by] permitting the admission of prejudicial testimony that the party elicited from a witness." *State v. Jackson*, 2023-Ohio-2193, ¶ 72 (3rd Dist.), quoting *State v. Rodgers*, 2023-Ohio-734, ¶ 77 (2d Dist.). "Under the doctrine of invited error, '[a] party will not be permitted to take advantage of an error [that] he himself invited or induced.' " *Jackson* at ¶ 72, quoting *State v. Breneman*, 2020-Ohio-4151, ¶ 48 (2d Dist.).

{¶76} Here, any error was invited. Appellant did not object and elicited the testimony he now complains of. Moreover, upon review of the record, appellant cannot

23

demonstrate that the outcome of his trial would have been different had this testimony been excluded.

{¶77} Appellant also argues in his second assignment of error, that the repeated testimony that appellant showered with A.A. and kissed her all over her body was also improperly admitted as it was only introduced to support the abuse. During trial, it was testified that appellant and the victim had showered together approximately five times when the victim was five or six. A.A. testified that she did not shower with appellant when she was older. While this testimony was elicited on direct examination, it does not equate to other acts evidence. Instead, this testimony was used to establish the relationship between appellant and A.A. The testimony that appellant was affectionate toward A.A. was not prejudicial toward defendant. As such, it was neither plain error nor an abuse of discretion to admit this testimony. Appellant's second assignment of error is without merit.

*A.A.'s Out-of-Court Statements*

{¶78} In his third assignment of error, appellant asserts that the trial court erred when it allowed A.A. to testify without first complying with Evid.R. 807. Appellant argues the trial court erred when it admitted the recordings of the forensic interviews, the transcripts of the interviews, and any testimony by a third party relating to the disclosure of the abuse. We disagree.

{¶79} Evid.R. 807 is a hearsay exception which permits "an out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing describing any sexual activity performed, or attempted to be performed, by, with, or on the child or describing any act or attempted act of physical harm directed against the child's person" when certain conditions are met. One condition is that "the child's

24

testimony is not reasonably obtainable by the proponent of the statement." Evid.R. 807(A)(2).

**{¶80}** Appellant relies on *State v. Silverman*, 2009-Ohio-1576, which held that a hearsay statement of a child declarant can be admitted under Evid.R. 807 without a determination of the child's competence to testify. *Id.* at ¶ 34. Appellant asserts that A.A.'s out-of-court statements should have been excluded pursuant to Evid.R. 807. Appellant's reliance on *Silverman* is misplaced.

**{¶81}** Here, A.A.'s testimony was reasonably attainable because A.A. testified at trial. Moreover, appellant did not otherwise raise A.A.'s competency to testify during her testimony. As such, Evid.R. 807 is inapplicable here.

**{¶82}** Instead, the child's out-of-court statements, specifically the CAC interviews, and related testimony from DeLuca and McAllen, were admitted pursuant to Evid.R. 803(4) as a statement made for medical diagnosis or treatment.

**{¶83}** Evid.R. 807 is not the sole method to introduce a child victim's out-of-court statements. Indeed, in *State v. Muttart*, 2007-Ohio-5267, the defendant argued that a child victims' statement could not be admitted where a trial court failed to determine the child's competency at the time the child made the statements. *Id.* at ¶ 33. The Supreme Court of Ohio held "that regardless of whether a child less than ten years old has been determined to be competent to testify pursuant to Evid.R. 601, the child's statements may be admitted at trial as an exception to the hearsay rule pursuant to Evid.R. 803(4) if they were made for purposes of medical diagnosis or treatment." *Id.* at syllabus.

**{¶84}** Further, the "Staff Note to Evid.R. 807 states: 'The rule recognizes a hearsay exception for the statements of children in abuse situations. This exception is *in*

25

Case No. 2024-T-0022

*addition to* the exceptions enumerated in Evid.R. 803 and 804.' (Emphasis original.) Thus, the trial court in its discretion determines which hearsay exception, if any, would most appropriately support the admission of the child's statements into evidence." *State v. Dever*, 64 Ohio St.3d 401, 414 (1992).

**{¶85}** DeLuca testified that the forensic interview assists the medical professionals in deciding tests to order or perform and in determining what, if any, treatments may be necessary.

**{¶86}** This Court has previously held statements in the forensic interviews were admissible hearsay under Evid.R. 803(4) because they had been made for the purpose of medical diagnosis." *State v. Volpi*, 2023-Ohio-4488, ¶ 87 (11th Dist.). The Court also held that while the forensic interviews were testimonial in nature, there was no Confrontation Clause violation where the defendant was able to cross-examine and confront both witnesses. *Id.* at ¶ 88.[5] *See also State v. DeJesus*, 2024-Ohio-2956, ¶ 38 (11th Dist.). Appellant was able to confront and cross-examine A.A. at trial. Therefore, there was no confrontation clause violation.

**{¶87}** Appellant also alleges in this assignment of error, that A.A.'s statements to her parents, Mother and Father, disclosing the abuse, were improperly admitted. Mother did testify, in detail, the statements A.A. made regarding the abuse. Appellant did not object. Father repeated briefly what Mother had relayed to him about A.A.'s statements. Appellant also did not object. As such, we review for plain error.

---

5. This Court reaffirmed this position on Volpi's recent appeal from his resentencing. *State v. Volpi*, 2024-Ohio-5764, ¶ 32.

Case No. 2024-T-0022

**{¶88}** These statements are hearsay that do not fall within a hearsay exception. However, we conclude, upon review of the record, the statements are harmless. Crim.R. 52(A). The hearsay statements made by the victim to her parents, were minimal, and were duplicative of statements she made during her trial testimony and during her statements to medical providers. *See State v. DeJesus*, 2024-Ohio-2956, ¶ 40 (11th Dist.), *appeal not allowed*, 2024-Ohio-5529. *See also State v. Howard*, 2020-Ohio-5057, ¶ 42 (11th Dist.). Therefore, the admission of the statements did not affect appellant's substantial rights.

**{¶89}** As such, appellant's third assignment of error is without merit.

*Expert Testimony - Crim.R. 16*

**{¶90}** In appellant's fourth assignment of error, appellant argues that the trial court erred when it allowed Nurse McAllen to give expert testimony. Appellant argues that the State did not provide a report and CV for Nurse McAllen prior to trial in accordance with Evid.R. 702 and Crim.R. 16(K).

**{¶91}** Crim.R. 16(K) provides that:

> An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

**{¶92}** Upon review of the record and exhibits, and contrary to appellant's assertions, the State provided Nurse McAllen's report to defense counsel well before trial and more than 21 days prior to trial. Moreover, the report complies with Crim.R. 16(K).

27

While in appearance it is similar to a medical report, it includes Nurse McAllen's credentials, details the procedures employed as well as the results of the physical examination that was performed by Nurse McAllen. It also includes her opinion that "this case is highly concerning for child sexual abuse." As such, we find that the State complied with Crim.R. 16.

{¶93} Appellant next argues that Nurse McAllen's testimony was outside the scope of her report. Specifically, appellant argues that the trial court erred when it permitted Nurse McAllen to discuss the concepts of grooming, incremental disclosure, and delayed disclosure in sexual assault cases.

{¶94} During direct examination of Nurse McAllen, the assistant prosecutor inquired about the definition of grooming. Defense counsel objected to the line of questioning saying Nurse McAllen was not qualified as an expert in child psychology. The trial court overruled the objection as she is an expert in child abuse. Dkt 43, p. 198. Nurse McAllen also testified generally about delayed and incremental disclosure in sexual assault cases. We note that Nurse McAllen's expert report is silent on delayed or incremental disclosure and  grooming.

{¶95} "'[T]he fact that delayed reporting by sexual assault victims is not uncommon is not within the knowledge of the average juror.'" (Emphasis deleted.)  *State v. Aboytes*, 2020-Ohio-6806, ¶ 90 (11th Dist.), quoting *State v. Cook,* 2017-Ohio-7953, ¶50 (11th Dist.). The Supreme Court of Ohio acknowledged that " '[m]ost jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse.' " *State  v. Stowers*, 81 Ohio St.3d 260, 262-263 (1998), quoting *State v. Boston*, 46 Ohio St.3d 108,128 (1989). As such, such testimony is permissible  "to counterbalance

28

the trier of fact's natural tendency to assess . . . delayed disclosure as weighing against the believability and truthfulness of the witness.' " *Stowers* at 263, quoting *State v. Gersin*, 76 Ohio St.3d 491, 494 (1996).

{¶96} Appellant relies on *State v. Boaston*, 2020-Ohio-1061, in support of his position that the expert testimony presented by Nurse McAllen was outside the scope of the report and that the admission of the testimony was prejudicial. In *Boaston*, prosecutors elicited an expert opinion regarding the victim's time of death and regarding whether a buckle on defendant's glove matched the markings on the victim's neck. Those opinions were not included in the State's report. The Supreme Court of Ohio concluded "that it was error to admit Dr. Scala-Barnett's expert testimony on Brandi's time of death and the glove-buckle comparison, as those topics were not set forth in a written report prepared in compliance with Crim.R. 16(K)." *Id.* at ¶ 59. *Boaston* is distinguishable for the case sub judice.

{¶97} Here, Nurse McAllen, a sexual assault nurse who has specialized education, training, and experience in sexual assault cases, offered additional information about sexual assault victims in general. This testimony included how victims have varying responses after experiencing sexual abuse. Importantly, Nurse McAllen did not offer any opinion regarding A.A.'s behaviors or if any of the general principles applied to the case.

{¶98} Even if permitting Nurse McAllen to testify to the general concepts of delayed disclosure, incremental disclosure, and grooming was improper, we conclude that such testimony is harmless as the testimony did not affect the outcome of the case. *See State v. Carpenter*, 2022-Ohio-898, ¶ 35 (7th Dist.). In regards to delayed disclosure,

29

Case No. 2024-T-0022

Nurse McAllen's testimony was duplicative of DeLuca's who also testified to these concepts. Interestingly, appellant did not take issue with similar testimony by DeLuca.

{¶99} Appellant's fourth assignment of error is meritless.

**Ineffective Assistance of Counsel**

{¶100} In his fifth assignment of error, appellant argues that he received ineffective assistance of counsel. Specifically, appellant asserts that his trial counsel was ineffective for failing to object to prosecutorial misconduct, for eliciting bad acts testimony during the cross-examination of Father, for failing to challenge the credibility of the victim, A.A., and her out-of-court statements about the abuse, and for failing to move to exclude the testimony of Nurse McAllen.

{¶101} In order to support a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, (1984). "[A] defendant claiming ineffective assistance of counsel 'must show that counsel's representation fell below an objective standard of reasonableness.' *Id.* at 687-688. 'He must also show that the ineffective representation prejudiced his case: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."'" *State v. Burke*, 2002-Ohio-5310, ¶ 6, quoting *Strickland* at 694. "Under *Strickland*, a court must apply 'a heavy measure of deference to counsel's judgments,' [*Strickland* at] 691, and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' *Id.* at 689." *Burke* at ¶ 7. Because

Case No. 2024-T-0022

a defendant must satisfy both prongs, failure to demonstrate either prong of *Strickland* can be dispositive.

{¶102} Because we have reviewed each of appellant's claims above and found no error, we necessarily conclude that appellant cannot establish that there is a reasonable probability that the result of the proceedings would have been different but for counsel's performance. Therefore, his ineffective assistance of counsel claim fails, and his fifth assignment of error is without merit.

**Sufficiency of Evidence**

{¶103} In appellant's sixth assignment of error, he alleges that there is insufficient evidence to support the rape convictions (Counts 4 & 5). Specifically, he argues that the State failed to present evidence of penetration.

{¶104} An appellate court reviewing the sufficiency of the evidence examines the evidence admitted at trial and determines whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991) *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89 (1997), fn. 4, paragraph two of the syllabus. "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). *See State v. Ross*, 2018-Ohio-452, ¶ 34 (11th Dist.). We review whether the evidence is legally sufficient to sustain a verdict is a question of law, de novo. *Ross* at ¶ 34*, citing Thompkins* at 386.

Case No. 2024-T-0022

{¶105} Appellant was convicted of two counts of rape, in violation of R.C. 2907.02(A)(1)(b)&(B).

{¶106} R.C. 2907.02(A)(1) provides in relevant part: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the person."

{¶107} "'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex. . ." R.C. 2907.01(A).

{¶108} The act of cunnilingus is completed by the placing of one's mouth on the female's genitals." *State v. Lynch*, 2003-Ohio-2284, ¶ 86. "[C]unnilingus constitutes 'sexual conduct' irrespective of penetration and, thus, the convictions stand." *State v. Wymer*, 2022-Ohio-4795, ¶ 50 (11th Dist.).

{¶109} A.A. testified that appellant licked her genitals. Specifically, that appellant placed his mouth on her vagina and her anus.

{¶110} This Court has held, "[t]he victim's testimony, if believed, was sufficient to convict appellant of the charged crime. When prosecuting an offender for rape, the state is not required to provide physical evidence of penetration. Rather, all the state must do is establish, beyond a reasonable doubt, that sexual conduct occurred. This may be accomplished through either physical evidence and/or witness testimony." *State v. DeJesus,* 2024-Ohio-2956, ¶ 48 (11th Dist.), quoting *State v. Henderson,* 2002-Ohio-6715, ¶ 35 (11th Dist.). *See also Ross*, 2018-Ohio-452, at ¶ 40.

Case No. 2024-T-0022

{¶111} Therefore, A.A.'s testimony, if believed, was sufficient to convict appellant of both counts of rape.

{¶112} Appellant's sixth assignment of error is without merit.

## Cumulative Error

{¶113} Finally, in his seventh and final assignment of error, appellant asserts that he was deprived of a fair trial and that his conviction should be reversed based on cumulative error.

{¶114} Under the doctrine of cumulative error, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial, even though each of the numerous errors does not individually constitute cause for reversal." *State v. Neyland*, 2014-Ohio-1914, ¶ 257, citing *State v. DeMarco*, 31 Ohio St.3d 191, 196-197 (1987), paragraph two of the syllabus.

{¶115} Having reviewed each of the alleged errors, we conclude the none of the purported errors either individually or cumulatively denied appellate a fair trial. As such, his final assignment of error is without merit.

## Conclusion

{¶116} For the reasons set forth above, the judgment of the Trumbull County Court of Common Pleas is affirmed.

MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

33